584 A.2d 1313

**Irving R. GROSS**

v.

**SESSINGHAUSE & OSTERGAARD, INC. et al.**

**No. 290, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 31, 1991.

John K. Burkhardt (Saiontz & Kirk, P.A., on the brief) Baltimore, for appellant.

William S. Tostanoski (Philip T. McCusker and Sweeney and Zacharski, on the brief), Baltimore, for appellee, Sessinghause.

Michael G. Comeau, Asst. Atty. Gen. (J. Joseph Curran, Atty. Gen. and Sophia L. Swope, Asst. Atty. Gen., on the brief), Baltimore, for appellee, Subsequent Injury Fund.

Argued before MOYLAN and BISHOP, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge, Specially Assigned.

The single issue presented in this appeal is whether the Circuit Court for Calvert County (Briscoe, J.), in a *de novo* hearing, correctly calculated the average weekly wage of Irving R. Gross, the appellant herein, who was injured in the course of his employment with Sessinghause & Ostergaard, Inc., the appellee. We shall affirm the judgment entered by the circuit court.

## Background

The appellant worked as a construction laborer for two years prior to June 6, 1984, on which date he sustained serious injuries when a tunnel collapsed in the area where he was working. Appellant filed a claim for benefits with the Worker's Compensation Commission, stating that he earned $11.00 per hour. The Commission, without a hearing, passed an award based upon an average weekly wage of $440.00. Apparently, the Commission used the hourly rate on the claim form multiplied by forty hours per week.

The issue of average weekly wage came before the Commission in November, 1987. At that time, appellant submitted a W–2 form for 1983 establishing gross earnings of $20,823.25, which reflects an average weekly wage over 52 weeks of $400.45. The appellee submitted a wage statement for the thirteen week period prior to the injury which indicates an average weekly wage of $282.20. Subsequent to that hearing, the Commission passed an order establishing the average weekly wage to be $400.00, prompting an appeal by the appellee herein to the circuit court.

In November, 1989, the circuit court held a *de novo* hearing on the average weekly wage issue. Testimony on that issue was presented for the first time and appellant stated that he worked full-time for the appellee while other employees were, on occasion, laid off. In 1983, appellant worked 48 weeks. He also worked the 13 weeks before he was injured.

The court found that the Commission gave no reason for using the prior year's wages in establishing the average weekly wage, rather than using the thirteen-week period set forth in Commission Rule .05 (COMAR sec. 14.09.01.05). Concluding that the Commission does not have "total and complete open-ended authority to just go back to whatever it feels comfortable with and give the claimant what they feel he deserves," the court established the average weekly wage using the thirteen-week period preceding the injury.

*Discussion*

Article 101, sec. 67(8), Md.Code Ann., provides:

(8) "Average weekly wages" for the purpose of this article shall be taken to mean the average weekly wages earned by an employee when working full time, and shall include tips and the reasonable value of board, rent, housing, lodging or similar advantages received from an employer, and if any employee shall receive wages paid in part by his employer and in part by the United States under any veterans' benefit law enacted by Congress, the term "average weekly wages" shall mean the total average weekly wages from both sources earned by such an employee when working full time.

The method of computation of such wages is promulgated pursuant to rules adopted by the Worker's Compensation Commission. Authority for the adoption of procedural rules is set forth in Article 101, sec. 10, which provides:

Subject to the provisions of this article, the Workmen's Compensation Commission shall adopt reasonable and proper rules to govern its procedure, which procedure shall be as summary and simple as reasonably may be. It shall regulate and provide for the kind and character of notices and the services thereof, and in cases of injury by accident to employees, the nature and extent of the proofs and evidence and the method of taking and furnishing the same for the establishment of the rights to compensation. It shall determine the nature and forms of application of those claiming to be entitled to benefits or compensation, and shall regulate the method of making investigations, physical examinations and inspections and prescribe the time within which adjudications and awards shall be made, provided, always, that all such rules and regulations shall conform to the provisions of this article.

Commission Rule .05 (COMAR sec. 10.09.01.05) sets forth the procedural steps in determining average weekly wage, to-wit:

A.  Average weekly wage shall be determined from gross wages, including overtime, and will be determined by the Commission based on the information in the Commission file before the hearing.

B.  Notwithstanding § A, *unless otherwise ordered after the hearing,* compensation payments shall be made based on: (1) The average wage earned by the employee during the 13 weeks before the accident; (2) Those weeks the employee actually worked during the period; (3) Those items set forth in Article 101, § 7(8), Annotated Code of Maryland.

C.  Periods of involuntary lay-off, or involuntary authorized absence are not included in the 13 weeks.  However, any vacation wages paid shall be included in computing average weekly wage.

D.  If payments are made at a rate other than that determined by the Commission in its initial award, the carrier, self-insurer, or State Accident Fund, within 60 days of the date of the initial award shall file with the Commission the basis on which the payments were made and shall serve a copy on the claimant or his attorney of record if represented.  (Emphasis supplied.)

The above Rule was adopted by the Commission and became effective July 1, 1983.

In *Stevenson v. Hill,* 171 Md. 572, 189 A. 910 (1937), the Court of Appeals succinctly set forth that the worker's compensation system has as its foundation a correlation between compensation paid and the amounts paid to workers according to payrolls.  The actual earnings furnish the basis of calculating the fund necessary to cover the compensation which is accumulated by insurance with an insurance carrier, the State Accident Fund, or by self-insurance.  *See Stevenson,* at 576–77, 189 A. 910.

The sole issue in *Stevenson,* as in the present case, was the method of calculating the average weekly wage.  The claimant was working full time and argued that the court should take into consideration, in computing the average weekly wage, the earnings that would be generated if the

mines were working to capacity, which was not the case in 1937. The court rejected that argument, stating that any computation not based on actual hours worked would be inconsistent with the correlation between wages earned and premiums paid by the employer.

An analogy may be drawn between the request in *Stevenson* and the theory advanced by the appellant herein, that strict adherence to Commission Rule .05 ought not be required and that other relevant wage data should be considered to carry out the remedial purposes of the worker's compensation law.

Under appellant's premise, he is entitled to the best of both worlds. If the prior year's earnings yield the highest average weekly wage, he is entitled to a computation based upon that figure. If, on the other hand, the thirteen weeks prior to his injury produces the highest average weekly wage, he ought to receive benefits based upon that figure.

We point out, however, that the Legislature, undoubtedly aware of similar arguments as those advanced by appellant, has not seen fit to amend the law as it now exists, and any effort to do so by judicial fiat would be an unwarranted intrusion into what is exclusively a legislative prerogative. The trial court aptly pointed out that both employees and employers alike must bear some of the losses that arise from a fluctuating and seldom constant market. Conceivably, the thirteen week period could, in the presence of full employment, overtime, and holiday bonuses, produce a higher wage than a prior year's average. Under different circumstances, the average wage for the prior year could, as in this case, produce a higher average wage. Neither scenario, however, warrants a disregard for the rules authorized by the Legislature and adopted by the Commission.

In support of his argument, appellant cites Gilbert and Humphrey, *Maryland Worker's Compensation Handbook*, sec. 2.1 (1988), stating:

Decisions which cast an otherwise qualified worker into a penurious position are probably flawed. Conversely, awards which constitute windfalls are equally imperfect.

We discern no advantage to either appellant or to appellee in the quoted passage. We assume that appellant cites this text in an effort to establish that a rigidly applied mechanical test is inappropriate in establishing average weekly wages.

The section cited, however, continues as follows:

Having said the foregoing, it must be recognized that the compensation available to any injured employee is properly payable only within the parameters of a statutory plan. Worker's compensation is governed by Maryland Annotated Code article 101. The constraints that it imposes upon both the worker and employer/insurer, from time to time cut deeply to the disadvantage of both. The occasional inequities or imbalances in the system are, however, in the area that may be properly corrected only by the legislature. Tinkering with the statutory scheme by counsel, commissioners or a court is an impermissible exercise of legislative power and does nothing to lend stability and predictability to the body of compensation law.

### Law

Our function is not to assess the propriety of the commission's decision, which is entitled to be viewed as being *prima facie* correct. The review we undertake focuses upon the fact finding and decision rendered by the trial court. As Judge Moylan made crystal clear in his scholarly discussion of administrative-judicial review in compensation cases:

From the identical record, the *de novo* or supervening fact finder may draw legitimate inferences different from the equally legitimate inferences drawn by the initial fact finder. The same evidence can support different results. No additional evidence, therefore, is required to support the change in result.

*See General Motors Corp. v. Bark,* 79 Md.App. 68, at 81, 82, 555 A.2d 542 (1989).

Commission Rule .05 B. provides that compensation payments following a hearing shall be based upon the average weekly wage for the thirteen weeks before the accident, unless otherwise ordered after the hearing. The Commission, therefore, is not locked into the thirteen week period if the circumstances or facts in a particular case warrant a reasonable alternative computation of average weekly wage. For example, a part-time employee may not have worked for the greater part of the thirteen weeks, but may have established an average weekly wage at some period within a reasonable period before his or her injury.

The right to deviate from the Rule, however, may not be arbitrarily invoked on a case-by-case basis. Departure from the Rule must be articulated by the Commission setting forth the factual basis for the decision rendered. That articulation was not set forth in this case and the trial court was not required to accept the Commission's preference. Any question as to whether the Commission is required to state the basis for its decision when deciding a claim or ruling upon substantive issues was put to rest by Judge Wilner in *Mission Helpers v. Beasley,* 82 Md.App. 155, 164, 570 A.2d 382 (1990).

Judge Briscoe recognized the problems incident to a shotgun approach in establishing average weekly wage, and stated:

As was pointed out, Mr. Gross could have been working on a job—and we all know how that is—you get to deadline, the contractor who is subject to penalties will put his people out there on Saturdays and Sundays and work them very hard and overtime. I imagine he could get a very, very inflated and not representative of the whole year's average of 13 weeks. But I think the employer is stuck with that if [it] happens to be that way.

If those 13 weeks immediately prior happen to be a real good 13 weeks, that's the benefit of the claimant.

And I think that's what the [*Stevenson* ] Court meant when it said that a claimant must bear some of the loss of wages in computing the yearly [sic] average, industry not being fixed and constant market, but varies with the tide of business. And when the level of business changes, the measure of earnings and of earning capacity with the statutory limits must change with it.

In accordance with Md. Rule 8–131(c), the standard we apply to an action tried without a jury is that, after reviewing the case on the law and the evidence, we will not set aside a judgment of the trial court on the evidence unless that judgment is clearly erroneous. We hold that the trial court was not clearly erroneous; in fact, it was correct.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.