626 A.2d 55

Irving R. GROSS

v.

SESSINGHAUSE & OSTERGAARD, INC. et al.

No. 29, Sept. Term, 1991.

Court of Appeals of Maryland.

June 16, 1993.

John K. Burkhardt (Saiontz & Kirk, P.A., both on brief), Baltimore, for petitioner.

Michael G. Comeau, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Sophia L. Swope, Asst. Atty. Gen., all on brief), William S. Tostanoski (Sweeney & Zacharski, both on brief), Baltimore, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ELDRIDGE, Judge.

The issue in this case involves the time period which the Workers' Compensation Commission may use in determining the "average weekly wage" of an injured worker.

## I.

The Workers' Compensation Act, Maryland Code (1991), §§ 9–101 *et seq.* of the Labor and Employment Article, "is designed to protect workers and their families from hardships inflicted by work-related injuries." *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733, 733–734 (1980). This protection includes, *inter alia,* compensation for lost earning capacity, paid as a percentage of a worker's pre-injury "average weekly wage." *See* § 9–637(a) of the Labor and Employment Article (providing that an employee who has suffered a permanent total disability shall be paid compensation equal to two-thirds of the employee's average weekly wage). The statute, however, does not specify a particular time period to be used in calculating a worker's average weekly wage. Instead, § 9–602 lists the elements to be considered as within the average weekly wage.[1]

---

1. Maryland Code (1991), § 9–602 of the Labor and Employment Article provides in part as follows:

   "(a) *Computation—In general.*—(1) Except as otherwise provided in this section, the average weekly wage of a covered employee shall be computed by determining the average of the weekly wages of the covered employee:
   (i) when the covered employee is working on full time; and
   (ii) at the time of:
   1. the accidental personal injury; or
   2. the last injurious exposure of the covered employee to the hazards of an occupational disease.
   "(2) For purposes of a computation under paragraph (1) of this subsection, wages shall include:
   (i) tips; and

The Workers' Compensation Commission is expressly authorized by § 9–309(a) of the Workers' Compensation title of the Maryland Code to "adopt regulations to carry out this title." In addition, § 9–701 broadly authorizes the Commission to promulgate procedural rules and regulations, specifically including regulations concerning "the nature and extent of evidence and proof" for establishing a right to compensation. At the time the present case arose, the Commission had promulgated a regulation governing the ascertainment of the average weekly wage. The regulation, referred to as Commission Rule 5, and set forth in COMAR 14.09.01.05, provided:

"A. Average weekly wage shall be determined from gross wages, including overtime, and will be determined by the Commission based on the information in the Commission file before the hearing.

"B. Notwithstanding § A, unless otherwise ·ordered after the hearing, compensation payments shall be based on: (1) the average wage earned by the employee during the 13 weeks before the accident; (2) those weeks the employee actually worked during the period; (3) those items set forth in Article 101, § 7(8), Annotated Code of Maryland.

"C. Periods of involuntary lay-off, or involuntary authorized absence are not included in the 13 weeks. However, any vacation wages paid shall be included in computing average weekly wage.

"D. If payments are made at a rate other than that determined by the Commission in its initial award, the carrier, self-insurer, or State Accident Fund, within 60 days

---

(ii) the reasonable value of housing, lodging, meals, rent, and other similar advantages that the covered employee received from the employer.

"(3) If a covered employee establishes that, because of the age and experience of the covered employee at the time of the accidental personal injury or last injurious exposure to the hazards of the occupational disease, the wages of the covered employee could be expected to increase under normal circumstances, the expected increase may be taken into account when computing the average weekly wage of the covered employee under paragraph (1) of this subsection."

of the date of the initial award shall file with the Commission the basis on which the payments were made and shall serve a copy on the claimant or his attorney of record if represented." [2]

The dispute in this case centers upon the language of subsection B above, stating that, "unless otherwise ordered after the hearing, compensation payments shall be based on ... the average wage earned by the employee during the thirteen weeks before the accident."

## II.

Irving Gross worked for Sessinghause & Ostergaard, Inc., a construction firm, for over two years preceding the accident which precipitated this case. On June 6, 1984, a tunnel in which Mr. Gross was working collapsed, causing injuries to his neck, shoulders, and back. He filed a claim for benefits with the Workers' Compensation Commission, and on the claim form he listed his wages as $11.00 per hour.

On the basis of this hourly wage representation, the Commission made an initial determination of Mr. Gross' average weekly wage as $440.00. The employer's insurance carrier, The Home Insurance Company, paid Mr. Gross's benefits on the basis of the Commission's initial wage determination, while the parties attempted to negotiate a permanent resolution of Mr. Gross's claim. By November 1986, the parties had not come to an agreement, and the insurer stopped making payments to Mr. Gross. Mr. Gross requested a hearing before the Commission, claiming that he was permanently and totally disabled and that the cessation of payments was gravely detrimental to him in light of his inability to work. The employer submitted a wage statement covering the thirteen weeks prior to the accident, which showed an average weekly wage of $282.20. The insurer also impleaded the Subsequent Injury Fund into the case.

---

2. In October of 1991, the Commission repealed Regulations .01 to .25 and promulgated new regulations. The new regulation concerning the average weekly wage is set forth in COMAR 14.09.01.07.

An administrative hearing was held on November 19, 1987. The major issues were the nature and extent of Mr. Gross's disability, and the proper calculation of his average weekly wage. On the wage issue, the employer and insurer argued that Mr. Gross's compensation ought to be based on the thirteen-week wage statement. Mr. Gross submitted his W–2 form for the year preceding the accident, showing total wages of $20,823.45, which, when divided by 52 weeks, comes to an average weekly wage of approximately $400.00. Mr. Gross argued that, given the nature of the heavy construction industry in which Mr. Gross worked, the yearly earnings better represented his earning capacity.[3] The remainder of the hearing addressed the other issues.

In an order issued on December 10, 1987, the Commission found that Mr. Gross's average weekly wage was $400.00 and that compensation should be awarded to Mr. Gross on this basis. The Commission also found that Mr. Gross was permanently and totally disabled, seventy-five percent of which was attributable to the accident and twenty-five percent of which was attributable to pre-existing conditions. The Commission further stated that

"the employer and insurer shall pay the sum of $104,000.00 representing the compensation payable for 75% due to the accidental injury and further finds that the Subsequent Injury Fund, pursuant to the provisions of Section 66, Subsection 1 of Article 101 shall pay the claimant compensation benefits at the rate of $267.00, per week and continuing during the period of permanent total disability, and said compensation to begin at the end of compensation to be paid by the employer and insurer."

The employer and insurer requested a rehearing with regard to the "finding that the claimant's average weekly wage

---

**3.** If Mr. Gross's average weekly wage is deemed to be $400.00, his worker's compensation benefit would be $267.00 per week. If the average weekly wage is deemed to be $282.20, his benefit would be $189.00 per week. As Mr. Gross was later found to be permanently and totally disabled, this benefit is his only employment related income.

was $400.00 per week." They argued that, under the statute and regulation, "the average weekly wage is computed based upon the thirteen weeks prior to the accident and not upon the claimant's entire work year." Mr. Gross in response argued that neither the statute nor any Commission regulation required the wage calculation to be based on the thirteen-week statement, and he reiterated his position that, under the circumstances of this case, the yearly wage statement was a fairer and more accurate reflection of his earnings. The Commission denied the request for rehearing.

The employer and insurer then filed in the Circuit Court for Calvert County an action for judicial review of the Commission's order. They contended that "the Commission misconstrued the law and facts as applicable to the Claimant's average weekly wage," and that the average weekly wage should be $282.20. At the circuit court nonjury hearing, Mr. Gross testified that he was a full-time employee of Sessinghause & Ostergaard, that he had worked approximately 48 out of 52 weeks the preceding year, that Sessinghause & Ostergaard was his only employer, and that he was retained even when other employees were laid off. The court, at the conclusion of the hearing, delivered an opinion in which it found that Mr. Gross was a full-time employee. The court then held that the Commission does not have the authority to base its average weekly wage calculation on anything but the thirteen-week statement, as provided for in Rule 5, unless after a hearing the Commission specifically finds that some inequity would result from doing so. The court stated that the Commission did not give any reason for choosing to use the prior year's wages rather than the thirteen weeks' wages. The court held that the Commission's decision was "arbitrary," and it reversed. The case was remanded to the Commission with instructions to amend its order to reflect the lower average weekly wage.

Mr. Gross took an appeal to the Court of Special Appeals, which affirmed the judgment of the circuit court. *Gross v. Sessinghause, Inc.*, 85 Md.App. 727, 584 A.2d 1313 (1991). The intermediate appellate court recognized that the thirteen-

week rule is not absolute. It stated (85 Md.App. at 734, 584 A.2d at 1316):

"Commission Rule .05 B. provides that compensation payments following a hearing shall be based upon the average weekly wage for the thirteen weeks before the accident, unless otherwise ordered after the hearing. The Commission, therefore, is not locked into the thirteen week period if the circumstances or facts in a particular case warrant a reasonable alternative computation of average weekly wage."

Nevertheless, the appellate court went on to state (*ibid.*):

"The right to deviate from the Rule, however, may not be arbitrarily invoked on a case-by-case basis. Departure from the Rule must be articulated by the Commission setting forth the factual basis for the decision rendered. That articulation was not set forth in this case and the trial court was not required to accept the Commission's preference."

Mr. Gross then filed in this Court a petition for a writ of certiorari which presented a single question as follows:

"Does the Maryland Workers' Compensation Act, and rules promulgated pursuant thereto, limit determination of the Claimant's 'average weekly wage' to the thirteen-week period prior to an accident?"

Neither the employer nor the insurer nor the Subsequent Injury Fund filed a cross petition for a writ of certiorari. Thereafter we granted Mr. Gross's petition and issued a writ of certiorari, 323 Md. 27, 590 A.2d 549.

### III.

In considering the parties' contentions, we first point out that no party has challenged the Commission's authority to promulgate the average weekly wage regulation referred to as Rule 5 and set forth in COMAR 14.09.01.05, or has otherwise challenged the validity of the regulation or its applicability to this case.

Mr. Gross argues that the issue before us is one of law, that the circuit court and Court of Special Appeals misconstrued

the Commission's Rule 5, that the regulation allows the Commission to use a period other than thirteen weeks prior to the accident as long as it does so after a hearing, and that neither the statute nor the regulation require the rigid adherence to the thirteen-week period which was mandated by the courts below. Mr. Gross alternatively argues that, even if the circuit court's and Court of Special Appeals' view of the regulation were correct, the case should have been remanded to the Commission for that agency to set forth its reasoning for deviating from the thirteen-week period.

The employer and insurer argue that the circuit court's determination, that the thirteen-week period should be used for establishing Mr. Gross's average weekly wage, should be treated as a finding of fact in a *de novo* judicial review proceeding. According to the employer and insurer, this "fact finding" is not "clearly erroneous" under Maryland Rule 8–131(c). The thrust of the employer's and insurer's argument, however, is that the provisions of the Commission's Rule 5 must "be followed unless there is a justified reason to deviate from them" (brief at 12), and that the Commission in this case "disregard[ed] its promulgated" regulation (*id.* at 9).

The Subsequent Injury Fund contends that the thirteen-week period prescribed by Rule 5 for determining an employee's average weekly wage should be utilized unless sufficient reasons exist for deviating from that period and such reasons are set forth by the Commission.

## IV.

Initially, we must decide if the decisions of both courts below were based on a circuit court finding of fact, as argued by the employer and insurer, or if they were rulings on an issue of law, as contended by the claimant and as conceded in oral argument by the Subsequent Injury Fund. In our view, it is clear that the circuit court's decision was not premised upon the resolution of a factual issue by that court. Instead, both courts below decided this case as a matter of law.

There were no disputed facts or disputed inferences in this case. Mr. Gross's testimony before the Commission and before the circuit court indicated that he was a full-time employee at the time of his injury and during the year preceding his injury. It was undisputed that the wage statement submitted by the employer accurately reflected Mr. Gross's average weekly wage during the thirteen-week period immediately preceding the injury. It was also undisputed that the W–2 form submitted by Mr. Gross accurately reflected his wages for the calendar year preceding the injury. The thirteen-week period urged by the employer and insurer, and the fifty-two-week period urged by the claimant, were the only two bases for determining Mr. Gross's average weekly wage submitted by any party. No other basis was suggested. The only disputed issue before the circuit court, before the Court of Special Appeals, and before this Court, has been whether, under the Commission's Rule 5, the Commission was required to use the thirteen-week period instead of the fifty-two-week period reflected by the W–2 form.

Moreover, the circuit court expressly acknowledged in its opinion that it was making no factual determination of the claimant's average weekly wage and that the issue before it was one of law. The circuit judge stated at the outset of his opinion as follows (emphasis added):

"The *only fact finding* the Court will state for the record is that the evidence is uncontradicted that the claimant in this case, Mr. Irving Gross, was at the time of his injury, and the year preceding his injury, a full-time employee as defined by law, and as interpreted by the law.

"This is a non-jury case appealed from the Workmen's Compensation Commission *on the sole legal issue* of whether the Commission erred in calculating the claimant/appellee's award based upon an average of the claimant's wages over a 52 week period as evidenced by his W–2 form, rather than upon an average of wages earned over a 13 week period immediately preceding his accident."

The remainder of the circuit judge's opinion confirms that the sole basis for the court's reversal of the Commission's decision was the court's conclusion that the Commission erred as a matter of law. The circuit judge's opinion did not find as a fact or intimate that, based on the evidence introduced, the average wages paid over a thirteen-week period best represented Mr. Gross's "average weekly wage." Instead, the thirteen-week period was based entirely upon the Commission's Rule 5. After indicating that Rule 5 was the "pertinent rule" and that, under it, "compensation payments shall be based on the average weekly wages earned during the 13 weeks before the accident," the circuit judge went on to criticize the Commission because the agency "did not state and articulate for the record that it had used other means, that they found that it was totally unfair and totally contrary to the benevolent and social policies of the Workers' Compensation law to use the 13 week period. . . ." With respect to the "unless otherwise ordered" language in the regulation, the circuit judge indicated that the Commission in determining a claimant's average weekly wage "does not [have] a great deal of latitude and flexibility." The circuit judge continued:

"The rule itself says that unless otherwise ordered at the hearing. And I think there they are leaving the door open where the Commission could say, this man is a seasonal worker, and we cannot use the immediate 13 weeks prior to his accident, because it would not fairly represent, it would be totally inequitable because of the very peculiar job he has of working beach umbrellas, or he only cuts wood in the wintertime or he only does certain things that are related to summer or fall that it would not be fair to him in the way of compensation."

Later, the judge reiterated that the Commission could depart from the thirteen-week period if the Commission could "articulate [justification] for the record" but that the Commission failed to do so here. "They did not give the appellants any justification. They did not justify going from the immediate 13 weeks prior to" the accident.

The Court of Special Appeals adopted the same approach as the circuit court, holding that under the Commission's Rule 5, the Commission is to determine a claimant's average weekly wage based upon "the thirteen weeks before the accident," that the Commission "is not locked into the thirteen week period if the circumstances or facts in a particular case warrant a reasonable alternative" basis, but that "[d]eparture from the Rule must be articulated by the Commission setting forth the factual basis for the decision rendered" and such "articulation was not set forth in this case," 85 Md.App. at 734, 584 A.2d at 1316.

Therefore, the issue in this case has consistently been treated as one of law, relating to the interpretation and application of an agency regulation. Specifically, the issue is whether, when the Commission departs from utilizing the thirteen-week period prescribed by Rule 5, the Commission must set forth findings or reasons justifying its departure.

Finally, treating the issue in this case as one of law is consistent with this Court's prior opinions. Where the "average weekly wage" issue in a workers' compensation case has not depended upon a resolution of disputed facts, but instead has concerned the *method* for determining the injured worker's average weekly wage, this Court has held that the "question is one of law." *Stevenson v. Hill,* 171 Md. 572, 573, 189 A. 910, 911 (1937). *See Crowner v. Balto. Butchers Ass'n,* 226 Md. 606, 175 A.2d 7 (1961); *Merrill v. Military Department,* 152 Md. 474, 136 A. 897 (1927); *Picanardi v. Emerson Hotel Co.,* 135 Md. 92, 108 A. 483 (1919).[4]

Consequently, the issue before us is whether the courts below correctly interpreted and applied Commission Rule 5.

---

4. While *Campbell Coal Co. v. Stuby,* 159 Md. 280, 286, 150 A. 878, 881 (1930), suggested that the Commission or a circuit court jury could decide on a case by case basis what period of time was appropriate for determining a claimant's average weekly wage, the Court's opinion in that case made it clear that this was in the absence of any legal provision dealing with the appropriate time period. At the time *Campbell Coal* was decided, the Commission had not promulgated a regulation fixing the time period for determining average weekly wage.

## V.

The critical language of the Commission's Rule 5 is that, "unless otherwise ordered after the hearing, compensation payments shall be based on ... the average weekly wage earned by the employee during the 13 weeks before the accident." As previously discussed, both courts below recognized that this language authorizes the Commission, after a hearing, to depart from the thirteen-week period. The circuit court and the Court of Special Appeals held, however, that whenever the Commission decides to do so, it is required to set forth expressly its findings or reasons justifying the departure.

■ The language of the regulation itself does not contain the requirement of specific findings or reasons which the courts below imposed. Instead, the only requirement set forth in the regulation for departing from the thirteen-week period is that there be a hearing. The Commission in this case held a hearing and then entered its order which included a finding that the claimant's average weekly wage was $400.00, based on the fifty-two-week period shown by the W–2 form. This procedure would seem to satisfy the requirements of Rule 5. No other regulations or statutory provisions or administrative law principles applicable to the Commission, which have been called to our attention, require more specific findings or reasons in this situation.[5]

---

**5.** Moreover, it is noteworthy that the usual Maryland administrative law requirement of findings on disputed factual issues is not ordinarily applicable to the Workers' Compensation Commission. Generally, administrative agencies, in rendering a decision in an adjudicatory or quasi-judicial proceeding after a hearing, must " 'resolve all significant conflicts in the evidence and then chronicle, in the record, full, complete and detailed findings of fact and conclusions of law.' " *United Steelworkers v. Beth. Steel*, 298 Md. 665, 678, 472 A.2d 62, 69 (1984), quoting *State Commission on Human Relations v. Malakoff*, 273 Md. 214, 229, 329 A.2d 8, 17 (1974). And, "in judicial review of agency action, the court may not uphold the agency order unless it is sustainable on the agency's findings and for reasons stated by the agency." *United Steelworkers v. Beth. Steel, supra,* 298 Md. at 679, 472 A.2d at 69. *See, e.g., Mossburg v. Montgomery County, Md.,* 329 Md. 494, 507, 620 A.2d 886, 893 (1993); *Harford County v. Preston,* 322 Md. 493, 503–505,

As previously noted, *supra* n. 3, prior to the promulgation of a regulation specifying a time period for calculating a injured worker's average weekly wage, the Commission was free to choose an appropriate period on a case-by-case basis. Several cases in this Court have recognized that an injured worker's average weekly wage can be based on a one year period. *Crowner v. Balto. Butchers Ass'n, supra,* 226 Md. at 608, 175 A.2d at 8 (the Commission used a fifty-two-week period, and its determination was upheld); *Stevenson v. Hill, supra,* 171 Md. at 574, 189 A. at 911 ("the Commission adopted . . . a year's earnings instead of those during six months, as the basis of computation"); *Merrill v. Military Department, supra,* 152 Md. at 479–480, 136 A. at 899 (recognizes that "annual earnings" are ordinarily an appropriate basis).

The Commission's Rule 5 appears to be designed to address the vast majority of cases in which there is no hearing. In such cases, it provides a definite rule in lieu of a case-by-case basis. The regulation also supplies a standard in those cases in which there is a hearing but where no question arises concerning the appropriate time period or where the Commission decides that it should not depart from the thirteen-week rule. Nevertheless, contrary to the view of the courts below, in a case where there is a hearing, the regulation does not purport to restrict the Commission in any manner from utilizing a different time period if the Commission deems it appropriate to do so.[6]

---

588 A.2d 772, 777–778 (1991), and cases there cited. These principles are not ordinarily applicable to the Workers' Compensation Commission, a unique agency whose decisions are normally subject to *de novo* judicial review. *Tobacco Company v. Goslin,* 163 Md. 74, 78, 160 A. 804, 806 (1932). *See Furley v. Warren–Ehret Co.,* 195 Md. 339, 345, 73 A.2d 497, 499 (1950); *Moore v. Clarke,* 171 Md. 39, 49, 187 A. 887, 892 (1936).

**6.** Both the Court of Special Appeals and the employer/insurer relied on *Stevenson v. Hill,* 171 Md. 572, 189 A. 910 (1937). That case, decided prior to the promulgation of a regulation specifying a time period for determining a claimant's average weekly wage, is distinguishable. In *Stevenson,* the claimant sought to introduce evidence of what his earnings would have been if economic conditions had been better.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY AND TO REMAND THE CASE TO THAT COURT WITH DIRECTIONS TO AFFIRM THE ORDER OF THE WORKERS' COMPENSATION COMMISSION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*

Here, Mr. Gross presented evidence of his actual past earnings, which the Commission appropriately used as a basis for determining his earning capacity.