*Danny Blankenship v. State of Maryland/MTA, et al.*, No. 179, Sept. Term 2017.  Opinion filed on May 31, 2018, by Berger, J.


**HEADNOTE**

WORKERS' COMPENSATION - STATUTORY OFFSETS

Two statutory offsets apply to workers' compensation benefits in order to prevent double recovery for the same injury: the statutory offset set forth in LE § 9-610 and the statutory offset set forth in Md. Code (1993, 2015 Repl. Vol.), § 29-118 of the State Personnel & Pensions Article ("SPP").  The LE § 9-610 offset applies to benefits except for those benefits "subject to an offset under [SPP] § 29-118."  The LE § 9-610 offset operates by reducing workers' compensation benefits, while the SPP § 29-118 offset leaves workers' compensation benefits unaffected.  The SPP offset applies when a pension is "administered" by the Board of Trustees for the State Retirement and Pension System; otherwise, the LE offset applies.


APPLICABILITY OF STATUTORY OFFSETS - STATE PERSONNEL AND PENSION OFFSET - LABOR AND EMPLOYMENT OFFSET - ADMINISTRATION OF MTA PENSION SYSTEM

The SPP § 29-118 offset applies when a pension is "administered" by the Board of Trustees for the State Retirement and Pension System; otherwise, the LE § 9-610 offset applies.  The State Personnel and Pensions System is responsible for the investment of the MTA pension's assets, but the MTA is otherwise responsible for the day-to-day administration of the pension.  Administration of the assets does not constitute "administration" of the MTA pension.

The MTA, and the MTA alone, is responsible for the day to-day administration of the MTA pension plan, including the payment of pension benefits and determination of participant eligibility.  Because the MTA pension is separate and distinct from the Maryland State Retirement and Pension System, the benefits at issue in this case were not subject to an offset under SPP § 29-118 but were subject to the LE § 9-610 offset.

Circuit Court for Baltimore City
Case No. 24-C-005274

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 179

September Term, 2017

DANNY BLANKENSHIP

v.

STATE OF MARYLAND/MTA, ET AL.

Berger,
Arthur,
Friedman,

JJ.

Opinion by Berger, J.
Dissenting Opinion by Friedman, J.

Filed: May 31, 2018

This case is before us on appeal from an order of the Circuit Court for Baltimore City granting summary judgment in favor of the Maryland Transit Administration ("MTA"), appellee. We are asked to determine whether the MTA is entitled to apply disability retirement benefits owed to Danny Blankenship ("Claimant"), appellant, as a credit to workers' compensation benefits also owed to him. The Maryland Workers' Compensation Commission ("Commission") determined that the MTA was not entitled to the statutory offset provided in Md. Code (1991, 2008 Repl. Vol.), § 9-610 of the Labor & Employment Article ("LE"). On judicial review, the circuit court reversed the Commission, determining that the LE § 9-610 offset does apply.

On appeal to this Court, Claimant alleges that the circuit court's ruling was erroneous and presents a single issue for our consideration, which we have rephrased slightly as follows:

> Whether the MTA is entitled to an offset under LE § 9-610 when an employee of the MTA is awarded both disability retirement benefits and permanent partial disability workers' compensation benefits for the same accident.

For the reasons explained herein, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

On March 1, 2012, Claimant, a 26-year employee of the MTA, suffered an accidental injury at work. Following the injury, Claimant applied for MTA disability retirement. His MTA disability retirement was approved, effective August 1, 2013. Claimant also filed a claim with the Commission and was awarded workers' compensation benefits for permanent partial disability. Claimant currently receives $724.00 per week in

workers' compensation benefits. In addition, Claimant receives $490.67 per week in disability retirement from the MTA pension system. The extent of Claimant's injury and the amount of Claimant's award are not at issue in this appeal.

Before the Commission, the MTA and its insurer, the Injured Workers' Insurance Fund (collectively, "MTA"), requested that the Commission allow an offset from the permanent partial disability benefits pursuant to LE § 9-610. The MTA asserted that the statutory offset applied because Claimant was concurrently receiving disability retirement benefits for the same injuries. The Commission denied the MTA's request for an offset. The Commissioner explained, in a written decision, that there was "ambiguity" as to whether the MTA's pension system was administered by the MTA itself or by the Board of Trustees for the State Retirement and Pension System (the "Board of Trustees").[1] The Commissioner determined that it was appropriate to resolve the ambiguity in favor of Claimant in light of the "long standing proposition that the Workers Compensation statute should be liberally construed in favor of injured workers in order to effectuate its benevolent purpose."

The MTA filed a petition for judicial review in the Circuit Court for Baltimore City. Claimant and the MTA filed cross-motions for summary judgment. After a hearing, the circuit court reversed the decision of the Commission and found that the statutory offset in LE § 9-610 was applicable to Claimant's benefits. The circuit court, after reviewing the

---

[1] As we shall explain, this issue is the determining factor in whether the LE § 9-610 offset is applicable.

2

governing law, determined that there was no ambiguity as to the administration of the MTA pension. The circuit court found "that the MTA administers its own plan and . . . the MTA plan is not part of the State Retirement Pension System."

This appeal followed.

## STANDARD OF REVIEW

The entry of summary judgment is governed by Maryland Rule 2-501, which provides:

> The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Md. Rule 2–501(f).

The Court of Appeals has articulated the appellate standard of review of a trial court's grant of a motion for summary judgment as follows:

> On review of an order granting summary judgment, our analysis "begins with the determination [of] whether a genuine dispute of material fact exists; only in the absence of such a dispute will we review questions of law." *D'Aoust v. Diamond*, 424 Md. 549, 574, 36 A.3d 941, 955 (2012) (quoting *Appiah v. Hall*, 416 Md. 533, 546, 7 A.3d 536, 544 (2010)); *O'Connor v. Balt. Cnty.*, 382 Md. 102, 110, 854 A.2d 1191, 1196 (2004). If no genuine dispute of material fact exists, this Court determines "whether the Circuit Court correctly entered summary judgment as a matter of law." *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condo.*, 404 Md. 560, 571, 948 A.2d 11, 18 (2008) (citations omitted). Thus, "[t]he standard of review of a trial court's grant of a motion for summary judgment on the law is *de novo*, that is, whether the trial court's legal conclusions were legally correct." *D'Aoust*, 424 Md. at 574, 36 A.3d at 955.

*Koste v. Town of Oxford*, 431 Md. 14, 24–25, 63 A.3d 582, 589 (2013).

In an appeal of a workers' compensation case, when the issue presented is an issue of law, "we review the decision *de novo*, without deference to the decisions of either the Commission or the circuit court." *Long v. Injured Workers' Ins. Fund*, 225 Md. App. 48, 57 (2015) (citing *Gross v. Sessinghause & Ostergaard, Inc.*, 331 Md. 37, 45-48 (1993)). Because this case presents only issues of law, we apply the *de novo* standard of review.

## DISCUSSION

The narrow issue before us in this appeal is whether LE § 9-610 applies to offset Claimant's benefits.[2]  Section 9-610 provides:

> (a)(1) **Except for benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article**, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9-201(2) of this title or, in case of death, to the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the

---

[2] The dissent would not reach the merits of this appeal because, in the dissent's view, this case involves a non-justiciable intragovernmental dispute between two State agencies. We disagree.  Claimant, as the party whose benefits are at issue, has a stake in the outcome of the case.  Indeed, the dissent recognizes that the Claimant has some interest in the effect when it acknowledges that "there are (unspecified) tax and (possible) other consequences of these choices to Mr. Blankenship -- which are not explained on the record . . . ."

We agree that Claimant's stake is not adequately delineated in the record. Nevertheless, this case is not a dispute between governmental agencies.  It is a case pursued by Claimant because it has unspecified financial consequences to him.  In contrast, the case cited in the dissent -- *State v. Bd. of Ed. of Montgomery County*, 346 Md. 633 (1997) -- involved a declaratory judgment action brought by the Board of Education against the State of Maryland and various State agencies.  We, therefore, hold that, under these circumstances, the case is justiciable.

> Subsequent Injury Fund for payment of similar benefits under this title.

(Emphasis added.) Claimant asserts that his benefits are subject to the offset set forth in Md. Code (1993, 2015 Repl. Vol.), § 29-118 of the State Personnel & Pensions Article ("SPP"), and, therefore, LE § 9-610 does not apply. In ruling for Claimant, the Commissioner adopted this position. The MTA asserts that the SPP § 29-118 offset does not apply, and, therefore, the LE § 9-610 offset does apply. The circuit court adopted this argument in granting the MTA's motion for summary judgment.

Before delving into the question of whether SPP § 29-118 applies, we discuss briefly the longstanding policy of the State of Maryland to prevent double recovery for a single injury. Indeed, "Maryland law has long provided for the offset of workers' compensation benefits against certain other benefits." *Zakwieia v. Baltimore Cty., Bd. of Educ.*, 231 Md. App. 644, 651, *cert. denied*, 454 Md. 676 (2017). "[F]rom the inception of the Workmen's Compensation law, the General Assembly was concerned with, and attempted to prohibit, governmental authorities being obliged to pay benefits to an employee twice as a result of the same injury." *Nooe v. City of Baltimore*, 28 Md. App. 348, 352 (1975).

In *State Retirement and Pension Systems of Maryland v. Thompson*, the Court of Appeals discussed the way in which SPP § 29-118 and LE § 9-610 each operate to prevent double recovery:

> Maryland law precludes a government employee from collecting duplicative benefits for the same work-related disability under both the workers' compensation law and the employer's retirement system. If the employee is covered by SRPS [State Retirement and Pension System of Maryland], the basic disability benefits payable by SRPS are reduced by the

5

amount of workers' compensation benefits received by the employee. Maryland Code, § 29-118(b)(1) of the State Personnel and Pensions Article (SPP) requires the Board of Trustees of SRPS to reduce disability retirement benefits otherwise payable to the former employee by the amount of any related workers' compensation benefits paid or payable after the effective date of retirement. If the employee is covered by some other public employment plan that provides disability benefits, it is the workers' compensation benefits that get reduced. Section 9-601(a) of the Labor & Employment Article (LE) provides, in that situation, that payment of the disability retirement benefit satisfies, to the extent of the payment, the employer's liability for workers' compensation benefits.

368 Md. 53, 55-56 (2002).

Although LE § 9-610 and SPP § 29-118 each operate to prevent double recovery, they operate differently. The LE § 9-610 offset operates by reducing workers' compensation benefits and leaving pension benefits unaffected. Pursuant to LE § 9-610, the Commission reduces a workers' compensation award by the amount of an injured employee's disability retirement pension.

The SPP § 29-118 offset, in contrast, reduces pension benefits but leaves workers' compensation benefits unaffected. Unlike the LE § 9-610 offset, the SPP § 29-118 offset is administered by the Board of Trustees. The statute provides, in relevant part:

> (a)(1) Except as otherwise provided in this subsection, this section applies to a retiree and any designated beneficiary.
>
> * * *
>
> (b)(1) **The Board of Trustees shall reduce an accidental or special disability retirement benefit**[3] **by any related**

---

[3] The statute specifically references "accidental or special disability retirement benefit." The Maryland State Retirement System has both accidental disability retirement and ordinary disability retirement. The MTA retirement system does not differentiate

6

> **workers' compensation benefits** paid or payable after the effective date of retirement if the workers' compensation benefits:
>
> > (i) are paid or payable while a pension is paid or payable; and
> >
> > (ii) are for an accidental personal injury arising out of and in the course of the retiree's employment by a participating employer.
>
> (2) A retirement allowance may not be reduced:
>
> > (i) to be less than the sum of the retiree's annuity and the amount authorized to be deducted for health insurance premiums; or
> >
> > (ii) for workers' compensation benefits that are reimbursements for legal fees, medical expenses, or other payments made to third parties and not to the retiree.

SPP § 29-118. (Emphasis supplied). Whether the offset set forth in LE § 9-610 is applicable to Claimant's benefits turns on our interpretation of SPP § 29-118 because the LE § 9-610 offset is expressly inapplicable to "benefits subject to an offset under § 29-118 of the State Personnel and Pensions Article." LE § 9-610(a)(1).

In order for the SPP § 29-118 offset to apply, Claimant's pension must be part of the State Retirement and Pension System. SPP § 21-102 provides:

> The State Retirement and Pension System consists of:
>
> (1) the Correctional Officers' Retirement System, established on July 1, 1974;
>
> (2) the Employees' Pension System, established on January 1, 1980;

---

between ordinary disability and accidental disability. Instead, it has only one category of "disability retirement."

(3) the Employees' Retirement System, established on October 1, 1941;

(4) the Judges' Retirement System, which consists of:

> (i) the contributory plan, established on July 1, 1969; and

> (ii) the noncontributory plan, established on April 7, 1904;

(5) the Legislative Pension Plan;

(6) the Local Fire and Police System, established on July 1, 1989;

(7) the Law Enforcement Officers' Pension System, established on July 2, 1990;

(8) the State Police Retirement System, established on July 1, 1949;

(9) the Teachers' Pension System, established on January 1, 1980;

(10) the Teachers' Retirement System, established on August 1, 1927; and

(11) **any other system or subsystem that the Board of Trustees administers.**

(Emphasis supplied.) Claimant asserts that the Board of Trustees "administers" the MTA pension system, and, therefore, the MTA pension system falls under the definition set forth in SPP § 21-102(11). The MTA argues that the MTA pension system is not administered by the Board of Trustees. As we shall explain, we agree with the MTA.

Pursuant to Md. Code (1977, 2015 Repl. Vol.), § 7-206(b)(2)(ii) of the Transportation Article ("TA"), the MTA "may . . . [e]stablish and maintain an independent

8

system of pensions and retirement benefits for its employees."[4]     Pursuant to

TA § 7-206(b)(2)(ii), the MTA has established its own pension system, which is set forth

in the collective bargaining agreement between the Local 1300 Amalgamated Transit

Union and the MTA.  The collective bargaining agreement includes language specifically

differentiating between the MTA plan and the State Retirement and Pensions Systems plan

and providing for the transfer from one plan to the other:

> Employees transferring directly into a position covered by this
> plan from a position covered by the State Retirement and
> Pensions Systems may transfer their MSRPS [Maryland State
> Retirement and Pension System] credited service to this plan,
> and their continuous service date for pension purposes shall be
> adjusted accordingly.  Likewise, an employee covered under
> this plan who transfers directly into a position covered by the
> MSRPS may elect to transfer their continuous service date and
> credited service to that plan in lieu of receiving a Deferred
> Vested Pension or Lump Sum payment from this plan.

Both parties acknowledge that the State Personnel and Pensions System is

responsible for the investment of the MTA pension's assets.  Section 29-110(b) of the State

Personnel and Pension Article provides:

> (b)(1) Subject to the approval of the Board of Public Works,
> the Board of Trustees may adopt regulations for **the
> administration of funds of a pension or retirement system
> established under §§ 7-206 and 7-603 of the Transportation
> Article**.
>
> (2) The Maryland Transit Administration shall pay all
> financing costs of a pension or retirement system established
> under §§ 7-206 and 7-603 of the Transportation Article,

---

[4] The statute additionally provides that the MTA "may . . . participate in the Employees' Retirement System and the Employees' Pension System of the State of Maryland on terms and conditions mutually acceptable to the Administration and the Board of Trustees for the State Retirement and Pension System."  TA §7-206(b)(2)(i).

9

including the pro rata share of the administrative costs that the
Board of Trustees incurs.

SPP § 29-110(b). (Emphasis supplied.) Claimant asserts that the administration of the

MTA pension funds constitutes the "administration" of the MTA pension plan pursuant to

SPP § 21-102(11). We disagree.

The Memorandum of Understanding ("MOU") between the Maryland State

Retirement Board and the MTA governs the investment of MTA pension funds by the

Board of Trustees, providing, *inter alia*, that "[t]he MTA Pension Plan assets delivered to

the Board [of Trustees] shall be invested and managed by the Board as the Board, in its

sole and absolute discretion, shall determine." The MOU further addresses the MTA's

administration of MTA pension obligations in paragraph 9, titled "MTA Continues to

Administer Its Plan":

> The MTA shall continue to administer its pension obligations
> to its covered employees and to make all policy determinations
> in connection with the management of its obligations to its
> covered employees. Accordingly, nothing in this Agreement
> shall be construed to mean that the Board agrees to administer
> the provision of benefits to the MTA pensioners or participants
> or to transact any other business for the MTA Pension Plan. To
> the contrary, the purpose of this Agreement is to set forth the
> policies and processes controlling the manner in which the
> Board administers the investment of the MTA Pension Plan
> assets.[5]

---

[5] During oral argument before this Court, counsel for the appellant argued that the
MOU did not control because the MOU post-dated Blankenship's effective date of
retirement. Following oral argument, the parties submitted a Joint Motion to Enter Exhibit,
seeking to admit the MOU in effect at the time of Blankenship's retirement (the "1990
MOU"). We deny the motion. *See Cochran v. Griffith Energy Serv., Inc.*, 191 Md. App.
625, 663 (2010) ("[A]n appellate court must confine its review to the evidence actually
before the trial court when it reached its decision."). Furthermore, the 1990 MOU does not

10

The administration of the MTA pension system is further addressed in TA § 7-603, which provides in relevant part:

> (b) The Administration may establish and maintain a system of pensions and retirement benefits for any of its employees.
>
> (c) The Administration may:
>
> > (1) Fix the terms of and restrictions on admission to the system and the classifications in it;
> >
> > (2) Provide that individuals eligible for admission to the system are not eligible for admission to or eligible to receive any benefits from any other pension system, except Social Security benefits, if the other system is financed or funded, whether wholly or partially or directly or indirectly, by funds paid or appropriated by the Administration; and
> >
> > (3) Provide a system of benefits payable to the beneficiaries and dependents of any participant in the system after the death of the participant, whether accidental or not and whether occurring in the performance of duty or not, subject to any exceptions, conditions, restrictions, and classifications that the Administration provides.

As discussed *supra*, Claimant asserts in this appeal that the MTA pension is part of the State Retirement and Pension System because it satisfies the definition of "any other system or subsystem that the Board of Trustees administers." SPP § 21-102(11). The authority discussed *supra* fails to support Claimant's assertion. Indeed, the aforementioned MOU -- to which the MTA and the Board of Trustees are parties -- expressly provides that

---

support Blankenship's argument that the MTA pension is administered by the Board of Trustees. Paragraph 8 of the 1990 MOU is virtually identical to Paragraph 9 of the current MOU quoted above, and both MOUs provide that the MTA continues to administer its own pension plan.

"[t]he Board of Trustees of the Maryland State Retirement and Pension System is responsible for the general administration and proper operation of several systems, **not including the pension plan provided by the MTA**, as specified in the Maryland Annotated Code, State Personnel and Pensions Article, Sections 21-102 and 21-108." MOU, § 1(B). (Emphasis supplied.) Notably, the Board of Trustees itself acknowledges that the MTA -- and not itself -- is responsible for the administration of the MTA pension.

We reject the Commission's conclusion that there is "ambiguity" as to the party responsible for the administration of the MTA pension plan. The authority discussed above -- Sections 7-206 and 7-603 of the Transportation Article, Section 29-110 of the State Personnel and Pensions Article, the Memorandum of Understanding between the Maryland State Retirement Board and the MTA, and the collective bargaining agreement between the Local 1300 Amalgamated Transit Union and the MTA -- all compel the conclusion that the MTA pension is administered by the MTA itself and not by the Board of Trustees. Simply put, the Board of Trustees is tasked only with the administration of the funds of the MTA pension, but not with the administration of the MTA pension system itself. It is the MTA, and the MTA alone, that is responsible for the day-to-day administration of the plan, including the payment of pension benefits and determination of participant eligibility. We hold, therefore, that the MTA pension is separate and distinct from the Maryland State Retirement and Pension System.

Because the MTA pension is not part of the Maryland State Retirement and Pension System, Claimant's benefits are not subject to an offset under SPP § 29-118. Accordingly, the Commission erred by failing to apply the offset set forth in LE § 9-610 to reduce

12

Claimant's benefits.  We, therefore, affirm the circuit court's order remanding this matter

to the Commission with instructions to modify its September 7, 2016 order by applying the

LE § 9-610 offset to Claimant's benefits.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.  COSTS TO BE PAID BY APPELLANT.**

Circuit Court for Baltimore City
Case No. 24-C-16-005274

_____

DANNY BLANKENSHIP

v.

STATE OF MARYLAND/MTA, *ET AL.*
_____

Berger,
Arthur,
Friedman,

JJ.

_____

Dissenting Opinion by Friedman, J.
_____

Filed:  May 31, 2018

I regret that I cannot join the majority's well-reasoned and well-written opinion. Because it is my view, however, that no matter how denominated this is a dispute between two organs of the executive branch of the Maryland State government, I would hold the matter not to be justiciable, and dismiss the appeal.

Mr. Blankenship's interest in the outcome of this appeal is tangential at best. As the majority carefully notes, Maryland law precludes double recoveries and Mr. Blankenship's recovery is no exception. If his offset is as directed by LE § 9-610, his worker's compensation benefits are reduced and his pension benefits are unaffected. If his offset is as directed by SPP § 29-118, his pension benefits are reduced and his workers' compensation benefits remain unaffected. ***Mr. Blankenship gets the same amount of money regardless***. While there are (unspecified) tax and (possible) other consequences of these choices to Mr. Blankenship—which are not explained in the record—the far larger and only direct consequence is to the two executive branch agencies, either of which might be forced to foot the bill: the Maryland Transit Administration (which pays Mr. Blankenship's workers' compensation benefit) or the Maryland State Retirement Agency (which pays his pension benefit).[1] *Blankenship v. State of Maryland/MTA*, ___ Md. App. ___, ___ No. 179, September Term 2017, Slip Op. at 2. (filed May __, 2018).

---

[1] Justice Hugo Black, writing for the Court in *United States v. I.C.C.,* cautioned that "courts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented." 337 U.S. 426, 430 (1949). In that case, despite that the caption listed two federal governmental entities, the Court found that there was a justiciable controversy. This case presents the opposite situation. Despite Blankenship's name appearing in the caption, this is really—at bottom—a nonjusticiable suit between two State governmental entities.

In our system of government, the judicial branch is not empowered to resolve disputes between executive branch agencies. *See generally State v. Bd. of Educ. of Montgomery Cty.*, 346 Md. 633, 647-48 (1997) (holding that disputes within State government about funding are properly decided "with no right of judicial review").[2] To do so violates the separation of powers and interferes with the Governor's control of the executive branch.[3] In my view, then, this case ought to be dismissed and the MTA and MSRA ought to decide amongst themselves (or have the Governor decide for them) which offset to provide Mr. Blankenship. Once the executive branch decides, if Mr. Blankenship doesn't think that decision comports with Maryland law, ***then*** he can sue and a court can resolve the controversy.

---

[2] *State v. Board of Education of Montgomery County* prohibits suits by a county board of education against the State. 346 Md. at 646-47. That case relied, in turn, on cases prohibiting suits by counties against the State. *Id.* at 645-46 (quoting *State v. B. & O. R.R. Co.,* 12 G. & J. 399, 436, 438 (1842) (prohibiting suit against State by Washington County), *aff'd* 3 How. 534, 11 L.Ed. 714 (1845)). The same prohibition must be stronger, not weaker, against the State suing itself.

[3] Federal courts generally prohibit lawsuits between federal agencies although the source and application of that prohibition is not always clear or consistent. *See* Joseph W. Mead, *Interagency Litigation and Article III*, 47 GA. L. REV. 1217 (2013). While I acknowledge the complexities that Mr. Mead has identified, none present themselves in the instant case.