## CORBIN H. MERRILL *v.* STATE MILITARY DEPARTMENT ET AL.

*Statutory .Construction—Workmen's Compansation Act—Injury to National Guardsman.*

If the obvious purpose of an enactment is beyond the literal meaning of the language employed, it will not be restricted in its scope and application by the narrow significance of its words, and likewise broad and comprehensive terms will not include that which is not within the design and the object of the statute.
p. 477

The "average weekly wages," within Code, art. 101, sec. 65, sub-sec. 8, of a member of the state militia, injured in time of peace while engaged in military service, who is, by Acts 1924, ch. 332, a workman for the purpose of receiving compensation, must be calculated upon the amount payable to him when employed for a continuous period of at least one week, as during the summer encampment.                          pp. 478-481

*Decided March 9th, 1927.*

Appeal from the Baltimore City Court (SOLTER, J.).

Claim under the Workmen's Compensation Act against the State of Maryland Military Department, employer, and the State Accident Fund, insurer. From a judgment reversing an award by the State Industrial Accident Commission, the claimant appeals. Reversed.

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Herbert L. Grymes,* for the appellant.

*Thomas H. Robinson, Attorney General,* and *Willis R. Jones, Assistant Attorney General,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The appellant in this case, whilst attending a camp of instruction at Virginia Beach, Virginia, where he had gone under orders of his superior officer, suffered a temporary total disability from injuries arising out of and in the course of his employment as a member of the Maryland National Guard.

Subsequently he filed a claim for compensation with the State Industrial Accident Commission, under chapter 332, Acts of 1924, and was awarded compensation at the rate of eight dollars per week. That award was reversed on appeal to the Baltimore City Court and from the judgment of that court reversing it, this appeal was taken.

The only question which it presents is what is meant by the phrase "average weekly wage" as used in article 101, Bagby's Code, when applied to cases arising under chapter 332, Acts of 1924. The facts material to that inquiry are these:

"Corbin H. Merrill was, at the time of his injury, a duly warranted corporal of the Maryland National Guard, and received the corporal's pay of $1.40 per day, for each day of his actual employment in the National Guard; he enlisted for a period of three years and his enlistment required him to obey the orders of his superior officers, including attendance at such drills, assemblies or encampments as might be ordered, and he actually attended forty-eight evening drills during the entire year prior to the accident, for which he received the per diem pay of $1.40 per evening.

On July 22nd, 1924, Corporal Merrill, with the Maryland National Guard and under orders of his superior officers, went to Virginia Beach to attend a camp of instruction for a period of fifteen days, during all of which time he was required to obey all orders of his superior officers, and for his obedience to these orders and the performance of the usual duties, he received $1.40 per day. He worked seven days per week during the encampment, so that the amount paid to Corporal Merrill by the Maryland National Guard

for the period he attended camp was at the rate of $9.80 per week."

The theory of the trial court was that Merrill's "average weekly wage" should be ascertained by taking the total amount actually paid to him for service as a member of the Maryland National Guard during the year next preceding the termination of the Virginia Beach encampment, and dividing that amount by fifty-two, and it granted a prayer establishing that rule as its guide in determining the compensation payable to the appellant, and that ruling is the subject of the only exception found in the record.

That construction of the phrase "average weekly wage," for which the State contends, seems to rest mainly upon the reasoning adopted by the courts of other states in considering the meaning to be given it when applied to the earnings of persons engaged in extra-hazardous occupations of a mechanical or industrial nature, whether such employment is regular, seasonal or intermittent, and in those cases it was determined largely by the language of the statutes under review. But the reasoning of the courts in those cases, and the conclusions reached by them, can be of little aid to us here, because of the difference in the language of the statutes under consideration in those cases and the language of the statute involved in this appeal.

It may be conceded that the machinery provided by article 101 to afford "relief for workmen engaged in extra-hazardous employments," chapter 800, Acts 1914, is ill adapted to effect the obvious purposes and intent of chapter 332 of the Acts of 1924. But we cannot suppose that the Legislature meant to do a wholly effectual and nugatory thing, nor that it meant to hold out to persons serving the State as members of its National Guard a false and illusory promise of relief from the consequences of injuries received in the course of that service. But if we accept the construction embodied in the appellee's granted prayer, we would necessarily hold that it did intend to do that very thing. It may be assumed that the organized state militia is composed of persons,

many of whom are engaged in various gainful occupations, who voluntarily give a part of their time to that particular public service. The service is of an extra-hazardous nature, Acts 1924, ch. 300, and the natural inference is that the Legislature by chapter 332 of the Acts of 1924, intended to hold out as an inducement to persons to enter that service some assurance that if they were injured in the course of it some relief would be afforded them. But that assurance would scarcely be met by allowing them, in the event of their being wholly disabled through injuries incurred in it, compensation based upon the rule adopted in the prayer under consideration.

Assuming that the act under consideration has some meaning, and that it was intended to accomplish some definite purpose, it becomes our duty to ascertain and give effect to that intent. For, as was said in *Roland Park v. State,* 80 Md. 451: "What we have to do is to discover the legislative intention and to give to it, when ascertained in accordance with established canons or rules, full and complete effect. The mere words which the Legislature may use are not always controlling. If the obvious purpose of an enactment is beyond the literal meaning of the language employed, it will not be restricted in its scope and application by the narrow significance of its words; and equally, too, broad and comprehensive terms will not include that which is not within the design and the object of the statute. The real intent, when ascertained, will always prevail over the literal sense of the language, *State v. Milburn,* 9 Gill, 109; *Milburn v. State,* 1 Md. 17; because both the canons of verbal criticism and the rules of grammatical construction must alike yield to the manifest spirit and intent of an enactment. Or, as differently expressed, 'Sometimes cases not within the words are held to be within the act, and other cases are by construction taken without the operation of the law, though covered by the language, according to the intent and design of the Legislature.' *Wilson etc. v. State, use of Davis,* 21 Md. 1. This intent or design may be gathered not merely from the lan-

guage of the enactment, but also from the causes or neces-sity which prompted its passage, and from foreign circum-stances. *Johnson and Wife v. Heald, Executor*, 33 Md. 252; *Dorousseau v. United States*, 6 Cranch, 307."

Since the statute is remedial in character, and intended to provide relief in cases where none existed before, it may reasonably be assumed that its purpose was to afford sub-stantial and not merely nominal relief, and we will therefore construe it with that purpose in mind.

Article 101, section 35, Bagby's Code, as amended by chap-ter 332, Acts of 1924, provides that "whenever the State * * * shall engage in any extra-hazardous work * * * in which workmen are employed for wages, this article shall be applica-ble thereto. In time of peace and while engaged in military service all officers and enlisted men of the organized militia of the State of Maryland shall be deemed workmen of the State for wages within the meaning of the preceding sen-tence." Section 36, sub-section 2, *Ibid.*, provides: "In case of temporary total disability, sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee during the continuance thereof, but not to exceed a maximum of eighteen dollars per week and not less than a minimum of eight dollars per week, unless the employee's established weekly wages are less than eight dollars per week at the time of the injury, in which event he shall receive com-pensation equal to his full wages." Section 65, sub-section 8, *Ibid.*, provides that: "'Average weekly wages' for the purposes of this article shall be taken to mean the average weekly wages earned by an employee when working on full time."

It was said in *Picanardi v. Emerson Hotel Company*, 135 Md. 95, that the "average weekly wage" referred to in sec-tion 36 could not be calculated upon any broader basis than that adopted for calculating premiums and rates of insur-ance, and that as they were calculated upon a payroll basis, the compensation to be awarded an injured employee must be calculated upon the same basis. But that case cannot be ac-cepted as controlling the questions before us, because not only

was the question in issue here not involved in it, but the
court in stating that principle did so in connection with a
definite and continuous employment, in which the average
weekly wage could be ascertained by reference to the wages
actually paid in the employment in which the claimant was
injured, or to wages paid to others engaged in similar em-
ployments.   But here there is no such guide.   The compen-
sation is fixed by statute, but the duration of the employ-
ment within certain minimum limits is contingent and un-
certain, but nevertheless compulsory.   And it would be unrea-
sonable to calculate the average weekly wage of the appellant
upon the assumption that his annual earnings would be for
the minimum service required by the statute when he may
be required under severe penalties to serve for a longer period
if required by the military officials of the state.   Article 65,
sections 4, 8, 25, 26, 27, Bagby's Code.   Under such circum-
stances, and keeping in mind the definition of "average week-
ly wages" (article 101, section 65, Bagby's Code, sub-section
8), that they shall be taken to mean the average weekly wage
earned by an employee when working on "full time," in our
opinion, appellant's average weekly wage must be calculated
upon the amount payable to him when employed for a con-
tinuous period of at least one week, as during the summer
encampment, for no other construction is possible which will
not frustrate the manifest intention of chapter 332 of the
Acts of 1924.   For, assuming that the rule stated in *Picanardi
v. Emerson Hotel, supra,* is applicable to all cases within the
scope of the original act, it does not follow that it must be
applied where that act has been extended to cases in which
it would be impracticable or absurd to apply it, especially
where such a course would be in flat conflict with the pur-
pose and policy of the amending act.   But in such a case the
original act and the amending act should be construed to-
gether to effect, if it can be done, the intent of the Legislature
as expressed in the later act.   *Re Quebec,* 247 Mass 80,
30 A. L. R. 996.   This conclusion is not wholly satisfactory,
but it is, in the opinion of a majority of the court, inevitable,
if we are to give any effect at all to the statute under consid-

eration, and it seems to be supported by such authority as there is on the question. In *Gillen's Case,* 215 Mass. 96, the employee, a longshoreman, was injured in the course of his employment by a steamship company for which he worked fifteen to twenty hours a week and from which he received not more than eight dollars a week. He also worked for other employers during the same group of days and earned from all of them an average weekly wage of thirteen dollars. The insurer in that case contended that his average weekly wage must be the average amount per week which he would earn from the same employer throughout the year. The statute in that case referred to "earnings" which is of broader significance than "wages," but the language of that court, speaking through Chief Justice Rugg, is not wholly inapplicable to the facts involved here. He said, "It is obvious from the broad scope of the act and its comprehensive dealing with the whole subject that it was intended to provide for the employee as compensation within the limits specified therein a definite proportion of the amount which he earned weekly. It cannot be presumed that the Legislature intended to offer a scheme of accident insurance which would be illusory or barren to large numbers of workmen. 'Weekly wages' as used in the first sentence quoted above plainly means all the wages which the employee receives in the course of permanent employment, which are all the wages he receives. Where words are used in one part of a statute in a definite sense it may be presumed, in the absence of a plain intent to the contrary, that they are used in the same sense in other places in the same act. Therefore, we reach the conclusion that average weekly wages as used in the clause of the act last quoted was not intended to apply to recurrent periods of brief service at regular intervals, in cases where the entire time of the workmen is devoted to like employments for other employers in the same general kind of business." See also *Schneider, Workmen's Compensation,* par. 450.

While neither the case last cited nor the reference to *Schneider's* work can be taken as strictly in point, they nevertheless illustrate the difficulty of adapting a statute to pur-

poses to which it was not originally intended to apply. But the Legislature, by the Act of 1924, clearly intended to afford some reasonably adequate relief to members of the National Guard injured in the course of their service, and since that intention can be effected in no other way, it must have intended to base the compensation payable to them either upon a theoretical week based upon their daily wage when in actual service, or upon the wages paid them during the only period in the year when they must serve "full time" for fifteen days continuously.

From what has been said it follows that in our opinion the trial court erred in granting appellees' prayer, and the judgment appealed from must be reversed.

*Judgment reversed, and case remanded for a new trial.*