CROWNER *v.* BALTIMORE UNITED BUTCHERS ASSOCIATION ET AL.

[No. 41, September Term, 1961.]

*Decided November 8, 1961.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Solomon Liss,* with whom was *Harold I. Glaser* on the brief, for the appellant.

*J. Howard Holzer, Assistant Attorney General,* and *Philip T. McCusker, Special Attorney,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the appellees.

MARBURY, J., delivered the opinion of the Court.

Roland G. Crowner, claimant and appellant, was employed

full time as a laborer by Armour and Company, in a meat packing plant in Baltimore City. He had been employed by them for a number of years and earned $2.27 an hour, making his average weekly wages for a normal, forty hour week $90.80. In addition, for a period of approximately three years, Crowner had been employed by Baltimore United Butchers Association (hereafter referred to as Baltimore United), one of the appellees herein, as a laborer, performing substantially the same services as for Armour and Company, one Saturday of each month, and received $15.00 for each Saturday that he worked.

On February 16, 1957, while working for Baltimore United, claimant sustained a compensable injury to his left arm and shoulder which resulted in a 40% permanent partial disability of the left arm. On March 14, 1958, the Workmen's Compensation Commission determined that he had sustained a 40% loss of use of his left arm and awarded him compensation for this permanent partial disability. It found his average weekly wage to be $3.46 per week.

The appellant contended that taking into consideration his earnings from Armour and Company and Baltimore United, his average weekly earnings were in excess of $100.00 per week, and that he therefore was entitled to be compensated at the rate of $25.00 per week for the period of 100.8 weeks. Code (1957), Article 101, Section 36, Par. (3)(a) and (b). In the alternative he contended that even if his earnings at Armour and Company were not to be considered, his average weekly wage was $15.00 per week and that he therefore was entitled to be compensated at the rate of 100.8 times $15.00. The Commission used the formula of multiplying the $15.00 received by the claimant each month from Baltimore United by 12 and then dividing the total by 52 weeks. By this formula the Commission determined that the average weekly wage of the claimant was $3.46 per week. From the judgment thereon an appeal was taken to the Baltimore City Court, where Judge Prendergast, sitting without a jury, affirmed the Commission, and this appeal is taken from his finding. The only question to be decided is what was the appellant's average weekly wage and how should his average weekly wage be determined.

This case presents a question not previously presented to this Court, but its determination has been suggested by our decisions on other related questions.

Code (1957), Article 101, § 67(8) defines average weekly wage as follows:

> " '*Average weekly wages*' for the purposes of this article shall be taken to mean the average weekly wages earned by an employee when working on full time, and shall include tips and the reasonable value of board, rent, housing, lodging or similar advantages received from an employer, and if any employee shall receive wages paid in part by his employer and in part by the United States under any veterans' benefit law enacted by Congress, the term 'average weekly wages' shall mean the total average weekly wages from both sources earned by such an employee when working on full time."

Prior to the amendment of this section to its present form it was held that the value of board and room at no fixed price could not be calculated and added to money wages. *Picanardi v. Emerson Hotel Co.,* 135 Md. 92, 108 Atl. 483.

In *Campbell Coal Co. v. Stuby,* 159 Md. 280, 150 Atl. 878, it was held that where the work [coal mining] was part time at best it could not be calculated at full time by the calendar.

*Stevenson v. Hill,* 171 Md. 572, 189 Atl. 910, held that the average weekly wages earned by an employee when working on full time were to be determined by an average of the amount which the employee might have earned working all the time that the mines in the region generally were operated over a period immediately preceding the injury.

In discussing the relationship between the premiums paid and the Workmen's Compensation coverage in *Stevenson v. Hill, supra,* at page 577 this Court said:

> "The premiums paid or set aside to constitute the fund are thus ascertained. The actual earnings are taken as determining the risk in loss of earnings or capacity. This correspondence would have to be disregarded to accept the present claimant's conten-

tion. The insurance premiums and the fund built up for compensation would lose their relation to the compensation to be paid. Employers distributing work on the share-the-work plan would multiply the responsibility for compensation without any increase in work done. Part time work for the benefit of employees during a time of depression could be provided only under a like disproportionate burden of compensation. Conceivably workmen injured might be entitled to receive much more by reason of their injuries than they could possibly earn at work."

This Court held in *Merrill v. State Military Department*, 152 Md. 474, 136 Atl. 897, that such "average weekly wages" of a member of the state militia, injured in time of peace while engaged in military service, who was, by an Act of the Legislature, a workman for the purpose of receiving compensation, should be calculated upon the amount payable to him when employed for a continuous period for at least one week, as during the summer encampment.

Appellant urges that in keeping with the social purpose of the Compensation law, which is remedial in character, the construction given the language of the statute should be resolved in favor of the claimant. The actual provisions of the statute (Code (1957), Article 101, § 63) are that the rule that statutes in derogation of the common law are to be strictly construed shall not apply to the Workmen's Compensation Act and that it "shall be so interpreted and construed as to effectuate its general purpose." This does not require a disregard of the clear meaning of the Act so as to favor any one group. *Rumple v. Henry H. Meyer Co., Inc.*, 208 Md. 350, 360, 118 A. 2d 486. There is a formula for arriving at the average weekly wage spelled out by the statute. This Court has several times stated that the average weekly wage is based on what the employee would earn from the employer where working under a specific contract of hire existing between the employer and employee. *Picanardi v. Emerson, Campbell Coal Co. v. Stuby*, and *Stevenson v. Hill*, all supra. In the absence of any further amendment to the statute we must follow our prior decisions dealing with the statute.

The instant case differs from the case of *Merrill v. Military Department, supra,* in that Merrill's employment did in fact provide him with full time employment during the annual summer training camp period, during which time he earned $1.40 per day, seven days per week. His weekly evening drill was, it is true, only one day per week, but the purpose of the National Guard's existence was to have a group of men available for full time military duty. Full time employment of seven days per week was what Merrill agreed to work, and the State agreed to pay him for, should the occasion arise. In the case of the appellant, however, both he and the employer knew and agreed that he was to work only one Saturday a month, he to receive $15.00 for this one day's work. This came to an average of $3.46 per week.

In *Merrill* we pointed out the difference between that case and the *Picanardi* case in showing that Picanardi's employment was definite and continuing, and the wages could be ascertained in connection therewith, while there was no such precise guide in the *Merrill* case, so that the Court had to use the full week of camp duty as a gauge for Merrill's weekly wage. In the *Picanardi* case, we held that average weekly wages could not be calculated on any broader basis than that adapted for calculating premiums and rates of insurance, and that as premiums were calculated on a payroll basis, the compensation to be awarded an injured employee must be calculated on the same basis. In reaching our decision in the *Merrill* case we did not overrule *Picanardi,* and did not change the concept of the relationship between the average weekly wages and premiums or insurance coverage. Moreover, in amending what is now § 67(8), *supra,* of the Workmen's Compensation law prior to the *Merrill* case it seems apparent that the Legislature must have had some reason for specifically stating in the last sentence of the definition, that average weekly wages shall mean the total average weekly wages from both sources (meaning both monies paid the employee under a veterans' benefit law and monies paid as wages by the employer) earned by such an employee when working on full time. This indicates that the Legislature was careful to make it clear that the employee's wages received from his employer

is what is meant by the phrase average weekly wages when working on full time. Had it seen fit to do so it could have amended the paragraph so as to make the phrase apply to all sources of wages, both regular and part time.

The appellant cites *Gillen v. Ocean Accident and Guarantee Corp.* (Mass.), 102 N. E. 346. Under the Massachusetts law at that time the definition of average weekly wages was the *earnings* of the injured employee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two. The opinion in that case, at page 348, concludes by saying: "The loss of his capacity to earn, as demonstrated by his conduct in such regular employment, is the basis upon which his compensation should be based." The Massachusetts statute, however, differs from the Maryland statute. As stated in the *Picanardi* case, *supra,* at page 96: "Wages and earnings are not synonymous terms. The latter is a much more comprehensive term, * * *." Appellant cites another case of foreign law in *Liberty Mutual Insurance Company v. Britton,* 233 F. 2d 699. This was a claim under the Workmen's Compensation law of the District of Columbia, namely, the Longshoremen's and Harbor Workers' Compensation Act. Section 10 (a), (b), and (c) of that Act, 33 U. S. C. A. § 910, contains the formula for establishing the average weekly wage. It is much more elaborate than the Maryland definition and does bring into the calculation the *earnings* from all sources. The case turned on the question of whether an employee's wages from employment other than that wherein he was injured should be included if the employee had worked at the type of work wherein he was injured for substantially the entire year. (Section 10 (a). The Court held that the calculation should not be so restricted, holding, in effect, that all three subsections of Section 10 should be called into play. That case is not controlling, nor do we think it persuasive because of the basic differences in the statutes.

In the instant case the claimant entered into a contract of hire with the employer, the terms of which were specific as to all factors. The employer insured the claimant's employment in accordance with the provisions of the Workmen's

Compensation law. By reason of the contract of hire the employer incurred certain obligations under the Compensation law. To impose other additional obligations on the employer and insurer, both of whom were, at the time of the accident, complying fully with all of their obligations under both the statutes and their contracts, would be unfair and, by judicial construction, extend the coverage of the compensation law into an area which would lead to disruption and confusion. If the law should be broadened to include the appellant's claim it should be modified by the Legislature, and not by our decision in this case.

Being of the opinion that the construction placed by the court below upon the statutes was correct in affirming the decision of the Commission, the judgment will be affirmed.

*Judgment affirmed, with costs.*