692 A.2d 449

**Clifford BUCKLER**

v.

**WILLETT CONSTRUCTION COMPANY**

No. 11 Sept.Term 1996.

Court of Appeals of Maryland.

April 14, 1997.

Steven C. Rohan (Barry M. Chasen, Chasen & Boscolo, Chartered, on brief), Greenbelt, for Appellant.

Kenneth Macleay (Rollins, Smalkin, Richards & Mackie, on brief), Baltimore, for Appellee.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ., and ROBERT C. MURPHY, J. (Retired and Specially Assigned).

RAKER, Judge.

■ This appeal arises out of a workers' compensation claim for temporary total disability benefits. The claimant sustained a compensable accidental injury arising out of and in the course of his employment. The issue we must decide is whether the claimant is entitled to receive temporary total disability benefits as a result of the accidental injury he suffered while working for one employer, which rendered him unable to perform that job, but allowed him to continue to work at his second job. We shall hold that under the Workers' Compensation Act (Act), Maryland Code (1991 Repl.Vol., 1996 Cum.Supp.) Title 9 of the Labor and Employment Article,[1] an employee cannot recover temporary total disability benefits when the employee maintains the non-injury employment while injured.

On February 3, 1994, Appellant, Clifford P. Buckler, sustained an accidental injury arising out of and in the course of his employment with Appellee, Willett Construction Company, when he fell and injured his left hand. At the time of the injury, Buckler was also employed as a night guard for E.L. Gardner, Inc. The injury rendered Buckler unable to perform his work for Willett Construction Company, but did not affect his ability to work for E.L. Gardner.[2]

---

1. The Maryland Workers' Compensation Act is codified at Title 9 of the Labor and Employment Article of the Maryland Code. Unless otherwise indicated, all statutory references hereinafter are to the Act. Md.Code (1991 Repl.Vol., 1996 Cum.Supp.) Labor and Employment Article.

2. The parties dispute the exact number of hours Buckler worked at E.L. Gardner, Inc. Willett Construction contends that Appellant increased his hours from approximately 30 hours per week prior to the injury to

Willett Construction paid Buckler's medical bills and temporary total disability benefits from February 3, 1994, to March 17, 1994. Willett Construction discontinued the benefits when it discovered that Buckler had been continually employed as a night guard.

Buckler filed a claim for continued temporary total disability benefits with the Workers' Compensation Commission (Commission). The Commission held a hearing on September 26, 1994, on the issue of additional temporary total disability from March 18, 1994, and continuing. The employer alleged at the hearing that Buckler was not entitled to temporary total disability benefits from March 18, 1994 to the date that he reached maximum medical improvement because he was working at another job during this period of time. The Commission determined that Buckler's average weekly wage was $339.00 and that he was entitled to temporary total disability benefits at the rate of $226.00 per week until March 17, 1994. The Commission denied his request for temporary total disability benefits beyond March 17, 1994.

Buckler filed a petition for judicial review in the Circuit Court for Prince George's County. The circuit court granted Willett Construction's Motion to Dismiss and affirmed the order of the Commission. The court held that Buckler was not entitled to temporary total disability benefits because he continued to work at E.L. Gardner and, therefore, he was not totally disabled. The circuit court remanded the case to the Commission for further proceedings. Buckler appealed to the Court of Special Appeals. We granted certiorari on our own motion prior to consideration by that court.

Buckler contends that the trial court erred by granting Willett Construction's Motion to Dismiss. He asserts that he is entitled to temporary total disability benefits to compensate him for his "loss of earning capacity" that resulted from the

---

approximately 40 hours a week after the injury. Appellant, however, maintains that he worked only 30 hours a week after the injury. We have not been provided with the employment records from E.L. Gardner, Inc.

injury.  Buckler takes the position that prior to the injury his earning capacity was the combination of his salary at Willett Construction Company and at E.L. Gardner.  Consequently, his inability to work at Willett Construction while injured decreased his earning capacity notwithstanding his continued employment with E.L. Gardner.

Willett Construction maintains that the trial court correctly dismissed Buckler's claim.  Because Buckler continued to work at E.L. Gardner while he was injured, he was not "totally disabled," and, therefore, he was not entitled to temporary total disability benefits.

The Act recognizes four categories of disability:  (1) temporary partial disability, § 9–614;  (2) temporary total disability, § 9–618;  (3) permanent partial disability, § 9–625;  and (4) permanent total disability, § 9–635.  The Act does not define the categories of disability, but rather sets out the formula for computing benefits in each category.  The cornerstone of the benefits calculation is "average weekly wage."  The statute directs that average weekly wage consists of the full-time wages of the employee [3] as of the time of the injury.  § 9–602(a).  To calculate benefits for temporary total disability, the benefits Buckler seeks in this case, the Act provides, in pertinent part:

> [I]f a covered employee is temporarily totally disabled due to an accidental personal injury or an occupational disease, the employer or its insurer shall pay the covered employee compensation that equals two-thirds of the average weekly wage of the covered employee. . . .

§ 9–621(a).  The Act calculates benefits differently for temporary partial disability.

> [I]f the wage earning capacity of a covered employee is less while temporarily partially disabled, the employer or its insurer shall pay the covered employee compensation that equals 50% of the difference between:

---

**3.**  The Act uses the term "covered employee."  Section 9–202 sets out the criteria to determine which employees are "covered" by the Act.

(i) the average weekly wage of the covered employee; and

(ii) the wage earning capacity of the covered employee in the same or other employment while temporarily partially disabled.

§ 9–615(a).

■ The statute does not define the terms "temporary total disability" and "temporary partial disability." We are able to gain insight into the Legislature's meaning, however, by construing the temporary total disability section, § 9–621, in the context of the temporary partial disability section, § 9–615. *See Blondell v. Baltimore City Police Dept.*, 341 Md. 680, 691, 672 A.2d 639, 645 (1996) ("[W]e construe the statute as a whole, interpreting each provision of the statute in the context of the entire statutory scheme."). In § 9–615(a), the General Assembly expressly recognized that an injured worker may be able to continue working after the injury, either at the same job or in some other employment. The formula for temporary partial disability, in contrast to the formula for temporary total disability, accounts for wages earned by the employee while disabled. When an employee becomes temporarily partially disabled, the employer is obligated to pay the employee fifty percent of the difference between the employee's average weekly wage and the wage-earning capacity of the employee in the same or other employment while injured. § 9–615(a). Temporary total disability looks only to average weekly wage. § 9–621(a). Implicit in the statutory structure is the notion, well-established by Maryland case law, that temporary total disability is incompatible with post-injury employment. Temporary partial disability benefits are those "paid to an injured worker who has rejoined the workforce but has not yet reached maximum medical improvement from the effects of the injury." [4] *See* R. GILBERT & R. HUMPHREYS, MARYLAND

---

**4.** Whether Buckler is entitled to benefits for a temporary partial disability is not before this Court. He did not raise the issue before the circuit court nor the Workers' Compensation Commission. We intimate no

WORKERS' COMPENSATION HANDBOOK § 9.2, at 203–04 (1993). Temporary total disability benefits, on the other hand, are those paid to a injured worker who is "wholly disabled and unable to work because of the injury." *Id.* at 204.

At issue in this case is whether Buckler is entitled to temporary total disability benefits. In the absence of a statutory definition of total disability, it is useful to review how this Court has interpreted that term in the past. This Court has defined the period of temporary total disability as the "healing period, or the time during which the workman is wholly disabled and unable by reason of his injury to work." *Gorman v. Atlantic Gulf & Pac. Co.*, 178 Md. 71, 78, 12 A.2d 525, 529 (1940); *see also Bowen v. Smith*, 342 Md. 449, 456, 677 A.2d 81, 84 (1996); *Victor v. Proctor & Gamble*, 318 Md. 624, 632–33, 569 A.2d 697, 702 (1990). We have recognized, however, that a worker need not be completely helpless to be deemed totally disabled. *Babcock & Wilcox, Inc. v. Steiner*, 258 Md. 468, 473, 265 A.2d 871, 874 (1970). To establish total disability, it suffices that the worker be able only "to perform services so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist." *Mayor & City Council of Baltimore v. Cassidy*, 338 Md. 88, 98, 656 A.2d 757, 762 (1995). "An employee capable of performing marketable, sedentary duties, cannot be classified as totally disabled under the Workers' Compensation Act." *Montgomery County v. Buckman*, 333 Md. 516, 529, 636 A.2d 448, 454 (1994).

This Court considered the meaning of "total disability" under the terms of Article 101 of the Maryland Code, the precursor to Title 9 of the Labor and Employment Article,[5] in

view on whether Buckler is entitled to temporary partial disability benefits.

5. In 1991, Article 101 was recodified as Title 9 of the Labor and Employment Article. *See* 1991 Maryland Laws ch. 8, at 248–50, ch. 21, at 1118–19. Section 9–621, which contains the formula for computing temporary total disability benefits, derives from Article 101, § 36(2), which provided, *inter alia*, that "[i]n the case of temporary total disability, sixty-six and two-thirds per centum of the average weekly

*Congoleum Nairn v. Brown,* 158 Md. 285, 148 A. 220 (1930). In *Brown,* while working for Congoleum Nairn, the claimant severed several fingers and he received compensation from the Commission for permanent partial disability resulting from that loss. *Id.* at 286, 148 A. at 220. The trial court awarded compensation for total disability. *Id.* at 287, 148 A. at 221. The relevant issue on appeal was whether the trial court properly instructed the jury that they might find permanent total disability if they found that prior to the accident, the claimant was able to do the regular work assigned to him, but after the accident, was totally and permanently incapacitated to do that work or any other work that he was accustomed and qualified to perform at the time of the accident. *Id.* at 287, 148 A. at 221. The employer objected to the instruction, asserting that "total disability in the Compensation Act means incapacity to do *further work of any kind,* not only of the kind he was accustomed and qualified to perform at the time of the accident." *Id.* at 287, 148 A. at 221 (emphasis added). This Court agreed and reversed the judgment, holding that in measuring wage-earning capacity, the measure is not limited to the same employment. The *Brown* Court reasoned:

> If it should be, then ability which was merely reduced by the accident might be taken as totally lost, and a workman who still possessed a high degree of capacity might be entitled to compensation for total disability because no longer capable of performing the kind or grade of work he was previously capable of performing. Or, in this particular case, the claimant, although he may have been considered by the jury as able to perform the duties of some occupations as testified, was, under the instruction, to be compensated as totally disabled if the work for which he was previously qualified was of a higher grade or materially different in other respects. In the opinion of this Court that was not the purpose of the compensation statute.

wages shall be paid to the employee during the continuance thereof." Section 9–621 is nearly identical to the former § 36(2).

*Id.* at 288, 148 A. at 221. If the injury allows a claimant to perform duties of some other occupation, the claimant is not totally disabled within the meaning of the Act. *See id.* at 288, 148 A. at 221.

This Court has more recently addressed the meaning of total disability in *Victor v. Proctor & Gamble,* 318 Md. 624, 569 A.2d 697 (1990) and *Bowen v. Smith,* 342 Md. 449, 677 A.2d 81 (1996). In *Victor,* the workers' compensation claimant who suffered an accidental injury on the job voluntarily retired before he was deemed temporarily totally disabled. The employer contended that it was not obligated to pay temporary total disability payments because the retired employee did not intend to work even if he were able. *Victor,* 318 Md. at 626–27, 569 A.2d at 698–99. This Court rejected that contention and reasoned that "[d]uring the healing period ... he was deemed under the Act to be unable to work, even if he desired to do so, because he was totally disabled." *Id.* at 633, 569 A.2d at 702.

In *Bowen,* this Court applied the reasoning of *Victor* to uphold an award of temporary total disability benefits to a claimant who became incarcerated after he was injured. The Court rejected the employer's contention that it was not obligated to pay disability benefits because it was the employee's incarceration, not his disability, that rendered him unable to work. *Bowen,* 342 Md. at 457–58, 677 A.2d at 85. Incarceration, like retirement in *Victor,* had no bearing on the employee's total disability. The relevant question, the Court reasoned, was not whether the employee could work while in jail, but rather whether the disability resulting from the injury continued. *Id.* at 458, 677 A.2d at 86.

*Victor* and *Bowen* reiterate and apply this Court's longstanding interpretation of the term "total disability." Total disability is synonymous with the inability to work. The ability to work at a job for which a reasonably stable market

exists precludes any finding of total disability under the Act.[6] *Cf. Captain v. Sonnier Timber Co.*, 503 So.2d 689 (La.Ct.App. 1987) (holding that workers' compensation claimant who is in fact working is, by definition, ineligible for total disability benefits); *State ex. rel. Johnson v. Rawac Plating Co.*, 61 Ohio St.3d 599, 575 N.E.2d 837 (1991) (holding that employee who continued to work at a second job was not totally disabled under Ohio law).

■ We hold that Buckler is ineligible for temporary total disability benefits because he was able to work while recovering from the injuries sustained at Willett Construction. During the time he was unable to work at Willett Construction due to the injury to his hand, he continued to do work for which a reasonable market exists, *Babcock & Wilcox, Inc. v. Steiner*, 258 Md. 468, 474, 265 A.2d 871, 874 (1970), *i.e.*, he worked as a night guard for E.L. Gardner. Total disability under the Act is not measured by actual loss of wages, but rather by the loss of earning capacity. *Victor v. Proctor & Gamble*, 318 Md. 624, 632, 569 A.2d 697, 700 (1990). Here, although Buckler may have lost wages, he remained capable of earning wages by performing a service for which a reasonably

---

6. In those jurisdictions with comparable statutory language, our sister states have interpreted total disability similarly. *See Bailey v. Litwin Corp.*, 713 P.2d 249, 253 (Alaska 1986) (citing case that quotes *Gorman v. Atlantic Gulf & Pacific Co.*, 178 Md. 71, 12 A.2d 525, 529 (1940), for proposition that temporary total disability is " 'the healing period or the time during which the workman is wholly disabled and unable by reason of his injury to work' "); *Pacific Gas & Elec. Co. v. Industrial Accident Comm'n*, 126 Cal.App.2d 554, 272 P.2d 818, 820 (1954) ("The period of temporary total disability is that period when the employee is totally incapacitated for work."); *A.M.T.C. of Illinois, Inc. v. Industrial Comm'n*, 77 Ill.2d 482, 34 Ill.Dec. 132, 134, 397 N.E.2d 804, 806 (1979) (total disability when a person "cannot perform services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them"); *Lee v. Minneapolis St. Ry. Co.*, 230 Minn. 315, 41 N.W.2d 433, 436 (1950) (an employee is totally disabled when the employee can only perform services for which no reasonably stable market exists); *McKinzie v. Sandon*, 141 Mont. 540, 380 P.2d 580, 583 (1963) (total disability requires that earning power be "wholly destroyed"); *Smith–Gruner v. Yandell*, 768 P.2d 388, 389 (Okla.Ct.App. 1989) (not temporarily totally disabled if claimant is "capable of some employment or . . . able to perform some remunerative work").

stable market exists. *Baltimore v. Cassidy,* 338 Md. 88, 98, 656 A.2d 757, 762 (1995). His earning capacity remained intact, as evidenced by his employment with E.L. Gardner subsequent to the injury.

Buckler contends that depriving him of temporary total disability benefits under these circumstances renders the compensation system unfair because, in calculating his average weekly wage, only the wages from the job at which he was injured are considered. *Crowner v. Baltimore Butchers Ass'n,* 226 Md. 606, 611, 175 A.2d 7, 9 (1961). He essentially argues that the compensation system lacks symmetry because had he been unable to work at either of his jobs after his injury, his wages from his employment with E.L. Gardner would not be considered in determining average weekly wage, but because he was able to continue working, his employment with E.L. Gardner is considered in determining temporary total disability.

This argument ignores the different functions of average weekly wage and temporary total disability determinations. Average weekly wage determines the amount an employer or its insurer must pay. In *Crowner,* this Court held that when determining the average weekly wage of a claimant with two jobs concurrently, only the wages at the injury-causing job shall be considered.[7] The Court reasoned that it would be unfair to impose additional financial obligations on the employer by calculating benefits based on a higher average weekly wage than the employee received. *See id.* at 613, 175 A.2d at 10. Temporary total disability, on the other hand, refers to the healing period during which the employee is unable to work due to the injury. *Gorman v. Atlantic Gulf & Pac. Co.,* 178 Md. 71, 78, 12 A.2d 525, 529 (1940). Temporary total disability describes a physical state and has no bearing on the

---

7. Several states have addressed the relationship between concurrent employment and average weekly wage by statute. *See, e.g.,* CONN.GEN. STAT. § 31–310(a) (1994); MASS ANN.LAWS ch. 152, § 1(1) (1996); N.H.REV.STAT.ANN. § 281–A:15(III) (1996); N.Y.WORK.COMP.LAW § 14(6) (Consol.1996); R.I.GEN.LAWS § 28–33–20(a)(1) (1996); VT.STAT.ANN. tit. 21, § 650(a) (1996).

relationship between concurrent employers. The rule set out in *Crowner* ensures that each employer will be responsible for paying benefits only in relation to wages paid to the injured employee, and not in relation to all of the employee's earnings from all sources. Temporary total disability merely describes the employee's physical state, independent of the employee's second job.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*