920 A.2d 1112

**Atrelle T. THOMAS**

v.

**GIANT FOOD, LLC, et al.**

**No. 1043, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

April 9, 2007.

**104**

Robert C. Baker, Rockville, for appellant.

Samuel J. DeBlasis, II, Lanham, for appellee.

Panel DEBORAH S. EYLER, WOODWARD and JOHN F. McAULIFFE, (Ret'd, Specially Assigned), JJ.

EYLER, DEBORAH S., J.

Atrelle T. Thomas filed a claim with the Workers' Compensation Commission ("Commission") for temporary partial disability benefits for an accidental injury he suffered in the course of his employment with Giant Food, LLC ("Giant"). The Commission denied the claim upon a finding that Thomas had not sustained compensable lost time from work.

Thomas appealed the Commission's decision to the Circuit Court for Prince George's County. The court granted summary judgment in favor of Giant, thus affirming the Commission's decision to deny benefits.

On appeal, Thomas poses one question for review, which we have rephrased:

Did the circuit court err in ruling that on the undisputed material facts he is not, as a matter of law, entitled to an award of temporary partial disability benefits under Md. Code (1999 Repl.Vol.), sections 9–614 and 9–615 of the Labor and Employment Article ("LE")?

Finding no error, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

The material facts are not in dispute. Thomas was employed by Giant as a deli clerk at its Landover store, earning $145.23 per week.[1] Thomas also held a second job, working for Radio One, a radio station. In the Radio One job, he worked on average 25 hours per week, for which he was paid

---

1. In his motion for summary judgment in the circuit court, the appellant asserted that he worked 20 hours per week at Giant earning $13.10 per hour, or $262 per week. In his original workers' compensation claim, the appellant also listed his weekly wage as $262.

It is undisputed, however, that his weekly wage is $145.23. By our calculation, the appellant only could have worked 11 hours per week at $13.10 per hour to earn that amount. We surmise that the appellant erroneously reported his bi-weekly wage and hours when he originally filed his claim.

$225. Thus, in his two part-time jobs, Thomas earned a total of $370.23 per week.

On October 28, 2004, Thomas was working at the Giant deli, moving a heavy grease pan, when he fell backward off a step, injuring his left hip and back. As a result, he was temporarily unable to work at his job at Giant.

Because Thomas's work at Radio One was sedentary, he was able to continue in that employment without interruption, despite his injury.

Thomas filed with the Commission an application for temporary partial disability benefits, under LE sections 9–614 and 9–615. Giant filed an opposition, arguing that Thomas did not suffer any compensable lost time from work, under LE section 9–615, because his weekly earnings from Radio One exceeded his average weekly wage from Giant. The Commission agreed with Giant that, under LE section 9–615, Thomas "sustained no compensable lost time," and denied his request for benefits on that ground. After unsuccessfully challenging that decision in the Circuit Court for Prince George's County, Thomas noted this appeal.

## DISCUSSION

Under LE section 9–614, "[a] covered employee who is temporarily partially disabled due to an accidental personal injury . . . shall be paid compensation in accordance" with LE section 9–615.[2] The latter section, titled "Payment of compensation," states, in relevant part:

(a) (1) Subject to paragraph (2) of this subsection, if the wage earning capacity of a covered employee is less while temporarily partially disabled, the employer or its insurer shall pay the covered employee compensation that equals 50% of the difference between:

(i) the average weekly wage of the covered employee; and

---

2. Thomas is a covered employee, as that term is defined at LE section 9–202. In this opinion, we shall refer to "covered employees" as "workers," for ease of discussion.

(ii) the wage earning capacity of the covered employee in the same or other employment while temporarily partially disabled.

(2) The compensation payable under paragraph (1) of this subsection may not exceed 50% of the State average weekly wage.

(b) The employer or its insurer shall pay the weekly compensation for the period that the covered employee is temporarily partially disabled.

LE § 9-615. Thus, for a worker to receive temporary partial disability compensation, he first must show that his "average weekly wage" exceeds his "wage earning capacity" while he is disabled. If so, he is entitled to one half of the difference between those amounts, or up to 50% of the State average weekly wage.

In this case, the Commission found that Thomas was not eligible for temporary partial disability compensation because his "average weekly wage" ($145.23 from Giant) was less than his "wage earning capacity" while disabled ($225 from Radio One). Thomas complains that the Commission erred by using his weekly earnings from Radio One as the measurement of his "wage earning capacity" while disabled. He maintains that the decisions by the Court of Appeals in *Buckler v. Willett Constr. Co.*, 345 Md. 350, 692 A.2d 449 (1997), and *Crowner v. Baltimore United Butchers Ass'n*, 226 Md. 606, 175 A.2d 7 (1961), support his position.

Giant responds that these cases do not support Thomas's argument; moreover, the plain meaning of LE section 9-615, taking into account the definition of "average weekly wage" in LE section 9-602, compels the conclusion that Thomas's "wage earning capacity" in "other employment" equaled his weekly earnings from Radio One. Because Thomas's "wage earning capacity," *i.e.*, his weekly pay from Radio One, exceeded his "average weekly wage," *i.e.*, his weekly pay from Giant, the Commission and the circuit court correctly determined that he was not due compensation under LE section 9-615.

Although there are some factual similarities between the *Buckler* case and the case at bar, a critical distinction exists: in *Buckler*, the claimant was seeking temporary *total* disability benefits, not temporary *partial* disability benefits. Before his injury, the claimant was working two jobs—one as a construction worker and one as a night guard. He sustained an injury while working construction that rendered him unable to return to work at that job. He was able to continue working as a night guard, however.

The Court held that, when a claimant "maintains the non-injury employment while injured" he "cannot recover temporary total disability benefits." *Buckler, supra,* 345 Md. at 352, 692 A.2d 449. This is so because temporary total disability benefits are those "paid to a[n] injured worker who is 'wholly disabled and unable to work because of the injury.'" *Id.* at 356, 692 A.2d 449 (quoting R. GILBERT & R. HUMPHREYS, MARYLAND WORKERS' COMPENSATION HANDBOOK § 9. 2, at 204 (1993)). Thus, because the claimant in *Buckler* was able to work in some capacity, he was not totally disabled within the meaning of the statute, and could not recover temporary total disability benefits.

*Buckler* is inapposite to the case at bar because, here, Thomas was seeking temporary *partial* disability benefits; and, as the nomenclature suggests, total disability is not a prerequisite to eligibility for partial disability benefits. The issue of whether the claimant in *Buckler* would have been entitled to temporary partial disability benefits was not before the Court, as the Court itself pointed out.[3]

██ Temporary partial disability benefits are "those 'paid to an injured worker who has rejoined the workforce but has not yet reached maximum medical improvement from the effects of the injury.'" *Id.* at 355, 692 A.2d 449 (quoting R. GILBERT & R. HUMPHREYS, *supra,* at 203–04). As discussed,

---

3. In a footnote, the Court stated, "Whether [the claimant] is entitled to benefits for a temporary partial disability is not before this Court.... We intimate no view" on it. *Id.* at 355 n. 4, 692 A.2d 449.

*supra,* pursuant to the method of calculating benefits for a temporary partial disability established in LE section 9–615, an employee who loses "wage earning capacity" due to a temporary partial disability is entitled to compensation equal to 50% of the difference between his "average weekly wage" and the employee's "wage earning capacity in the same or other employment" while disabled.

"Average weekly wage" is defined in LE section 9–602(a). In pertinent part, the formula for computing a worker's average weekly wage is as follows:

(a)(1) Except as otherwise provided in this section, the average weekly wage of a covered employee shall be computed by determining the average of the weekly wages of the covered employee:

(i) when the covered employee is working on full time; and

(ii) at the time of:

1. the accidental personal injury; . . . .

LE § 9–602(a).

In *Crowner, supra,* 226 Md. at 606, 175 A.2d 7, the other case Thomas relies upon, the Court of Appeals construed the phrase "average weekly wage," as used in the predecessor statute to LE section 9–602. The claimant in *Crowner* had been working two jobs: 40 hours a week at a meat packing plant, at $2.27 per hour, and one Saturday a month at a butchers' association, at $15 per day. While working at the butchers' association, he suffered an accidental injury to his left arm and shoulder, which resulted in a 40% loss of use of his left arm.

The claimant applied for permanent partial disability benefits. Under the controlling statute, his benefits were to be calculated based upon his "average weekly wage." The claimant argued that his "average weekly wage" was the combination of his earnings from his two employments. The Commission rejected that argument, calculating the claimant's "average weekly wage" based upon his earnings from the butchers' association only: $15, multiplied by 12, and divided

by 52, which came $3.46 per week. The claimant unsuccessfully challenged the Commission's decision in the circuit court, and then before the Court of Appeals.

The statutory definition of "average weekly wage" when *Crowner* was decided was substantively the same as LE section 9–602(a); it stated that the phrase "shall be taken to mean the average weekly wages earned by an employee when working on full time. . . ." Code (1957), Article 101, § 67(8). The definition went on to provide, by exception, that "if any employee shall receive wages paid in part by his employer and in part by the United States under any veterans' benefit law enacted by Congress, [average weekly wage] shall mean the total average weekly wages from both sources earned by such an employee when working on fulltime." *Id.* That exception for veterans still exists, and is codified at LE section 9–602(i).

The *Crowner* Court held that the claimant's average weekly wage consisted only of the wage he had been earning from his injury-causing job, and did not include the additional wages he had been earning from his other, concurrent, employment. The Court reasoned that, had the Legislature intended for a worker's average weekly wage to include wages from all employment sources, including veterans' benefits, it "could have amended the [statute] so as to make the phrase [average weekly wage] apply to all sources of wages, both regular and part time." *Crowner, supra,* 226 Md. at 612, 175 A.2d 7. Instead, the legislature enacted the limited exception permitting the veterans' benefits wages to be included in the average weekly wage. That enactment reflected a legislative intention that "average weekly wage" not include wages from all employment sources.

The *Crowner* Court further reasoned that, because workers' compensation insurance premiums are tied to the wages employers pay their employees, and not to additional wages their employees may be earning from other employment, it would be inconsistent with the statutory scheme to hold the injury-causing job employer responsible, indirectly, for compensating his employee for lost wages from a second job. The Court

opined that "the Legislature was careful to make it clear that the employee's wages received from his employer is what is meant by the phrase [']average weekly wages when working on full time.[']" *Id.* at 611–12, 175 A.2d 7.

Over the years since *Crowner* was decided, the General Assembly has amended LE section 9–602 by increasing the number of exceptions to the basic formula for calculating the "average weekly wage" established in subsection (a). One such exception, captioned "Covered employees with more than one employer," varies, in specifically defined circumstances, the formula for computing the "average weekly wage" of a worker who holds two or more jobs. For the exception to apply, the worker must have suffered a work-related serious permanent partial or total disability; his injury-producing employment must have been 20 hours a week or less; and, due to the injury, he must be unable to work in any employment in which he was engaged at the time of the injury (or in any similar employment). LE § 9–602($l$).

If those criteria are met, and if the worker's weekly wage from his non-injury employment exceeded his weekly wage from his injury-producing employment, his "average weekly wage" is calculated based upon his weekly wage from his non-injury producing employment and not based upon his injury-producing employment. The language of the exception cautions that it "may not be interpreted as . . . . requiring the weekly wages from the employments the employee was engaged in at the time of the accidental personal injury to be combined for purposes of computing the average weekly wage of the covered employee." LE § 9–602($l$)(3).

This concurrent employment exception, like the veterans' benefits exception, is inconsistent with a legislative intention to include wages from dual or multiple employments in the "average weekly wage" formula. Had the General Assembly wanted to alter that formula to include such additional wages, it could have done so directly, and would not have created another limited exception, as it did.

Thomas's work-related injury situation is not within the ambit of the limited exception from the standard formula for average weekly wage that covers certain employees with dual or multiple employment.[4]  He did not suffer a permanent disability and his injury did not prevent him from engaging in his concurrent employment with Radio One. It is worth noting, moreover, that, even for those employees to whom the limited exception applies, the "average weekly wage" is not computed by combining the wages from the employee's jobs; rather, it is computed by substituting the employee's weekly wages at the job where "the employee earned the highest wages" for his weekly wages at his other job.  LE § 9–602(e).

Accordingly, Thomas's average weekly wage must be calculated by means of the basic method established in LE section 9–602(a).  Using that formula, even though Thomas was working two part-time jobs, his "average weekly wage" was comprised only of his weekly earnings from the injury-producing job, at Giant.  *Crowner, supra,* at 610, 175 A.2d 7.

█  Returning to the application of LE section 9–615 to the undisputed facts of this case, Thomas cites no authority for the proposition that his "wage earning capacity"—for our purposes, the only other operative phrase in that statute—does not include the $225 per week that he continued to earn, while disabled, from Radio One. Indeed, in oral argument before this Court, Thomas's counsel candidly acknowledged that the statutory language—"the wage earning capacity of the ... employee in the same *or other employment* while temporarily partially disabled" (emphasis added)—encompasses Thomas's Radio One wages.

Rather, Thomas's argument is grounded in equity.  He complains that an outcome that produces no compensation for an injured worker in his situation unfairly penalizes workers who hold two (or more) part-time jobs instead of one full-time

---

**4.** The claimant in *Crowner* would, however, have benefited from this exception, which was enacted after that case was decided, if his permanent partial disability qualified as a "serious" disability pursuant to LE section 9–630.

*job.* Before his injury, he was earning about $370 per week in two part-time jobs; after his injury, during his period of disability, he was earning a total of only about $225 per week. He maintains that it is not fair, and contrary to the social purposes of the workers' compensation laws, that the law does not consider him to have suffered *any* loss of wage earning capacity as a result of his work-related injury.

To be sure, there is a facial appeal to Thomas's argument. During his period of disability, and as a result of the injury he sustained on the job, Thomas was earning less money per week than he had been earning before; and his lost income was solely comprised of his earnings from Giant. Thomas characterizes this result as a boon to Giant, which need not pay benefits to a worker who suffered an on-the-job injury, merely because the worker was industrious enough to have held down a second, more lucrative, job.

■ Workers' compensation benefits are a creature of statute, however, and when the controlling enactments are clear, they must guide the outcome. As the evolution and legislative history of LE section 9–602 discloses, when the General Assembly has intended to make dual or multiple employments a factor in determining benefits, it has done so by fashioning exceptions to the basic formula for calculating a worker's "average weekly wage." None of the exceptions apply here, however.

Thomas's equity argument, that wages from a non-injury producing job do not constitute a worker's "wage earning capacity," not only is inconsistent with the language of LE section 9–615, which does not limit "wage earning capacity" to income only from the injury-producing job, but also is inconsistent with the definition of and exceptions to "average weekly wage," in LE section 9–602, in that, in the context of temporary partial disability benefits, it would produce a result that the definition and exceptions do not permit.

■ As we have explained, unless an exception in LE section 9–602 applies, a worker cannot combine his wages from more than one job to arrive at his average weekly wage.

If he could, then subtracting his non-injury producing wages (*i.e.,* those wages he continues to earn while disabled) always would produce a positive number that would in turn result in the worker's receiving a benefit. Thomas seeks to achieve the same result, however, by counting only his Giant wages in his "average weekly wage," as required by LE section 9–602, but also counting only his Giant wages, and not his Radio One wage, in determining his "wage earning capacity." LE section 9–615 does not confine "wage earning capacity" to wages earned from the injury-producing employment, however, and should not be read in such a way as to authorize an end-run around the limitations in LE section 9–602 on what constitutes a worker's "average weekly wage."

The General Assembly has clearly stated, in LE section 9–615, that an injured worker's "wage earning capacity" includes income, during his period of disability, from the injury-producing job and from other jobs. If the General Assembly wishes to alter that definition, it may do so; but this Court may not. Accordingly, the circuit court properly determined, on the undisputed material facts, that under LE section 9–615, Thomas was not entitled to temporary partial disability benefits.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**